14 Civ 8124 (ALC) (AJP)

UNITED STATES DISTRICT COURT
SOUTHERNDISTRICT OF NEW YORK

ARIEL DOUGLAS,

                                                    Plaintiff,

                            -against-

THE CITY OF NEW YORK; POLICE OFFICER ANTHONY
DIFRANCESCA, Shield No. 04200; POLICE OFFICER
JEROME ALLEN, Shield No. 27302; POLICE SERGEANT
BRIAN BYRNES, Shield No. 969; JOHN DOES; and RICHARD
ROES,

                                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*
*Of Counsel:  Andrew J. Lucas; Joy T. Anakhu*
*Tel: (212) 356-2373*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

STANDARD OF REVIEW ........................................................................................................... 3

THERE WAS PROBABLE CAUSE TO ARREST
PLAINTIFF................................................................................................................. 3

PLAINTIFF'S ABUSE OF PROCESS AND
MALICIOUS PROSECUTION CLAIMS MUST
BE DISMISSED ........................................................................................................ 6

DEFENDANTS ARE ENTITLED TO
JUDGMENT ON PLAINTIFF'S FORCE CLAIM ................................................... 8

PLAINTIFF'S RETALIATION CLAIM FAILS ..................................................... 11

PLAINTIFF HAS NO DUE PROCESS CLAIM ..................................................... 12

PLAINTIFF'S FAILURE TO INTERVENE AND
TO SUPERVISE CLAIMS FAIL AS A MATTER
OF LAW ................................................................................................................... 13

DEFENDANTS ARE ENTITLED TO
QUALIFIED IMMUNITY ...................................................................................... 16

DEFENDANT CITY IS ENTITLED TO
SUMMARY JUDGMENT ON PLAINTIFF'S
MONELL CLAIM .................................................................................................... 20

PLAINTIFF CANNOT MAINTAIN STATE LAW
CLAIMS ................................................................................................................... 25

CONCLUSION........................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases** **Pages**

Albright v. Oliver,
 510 U.S. 266 (1994)...................................................................................................... 13

Alcantara v. City of New York,
 646 F. Supp. 2d 449 (S.D.N.Y. June 23, 2009) ......................................................... 6

Allen v. City of New York,
 No. 03 CIv. 2829 (KMW) (GWG), 2007 U.S. Dist. LEXIS 15 (S.D.N.Y. Jan. 3, 2007) .. 11, 18

Ariza v. City of New York,
 139 F.3d 132 (2d Cir. 1998)........................................................................................ 24

Ashcroft v. Iqbal,
 556 U.S. 662 (2009)..................................................................................................... 15

Barry v. New York City Police Department,
 No. 01 Civ. 10627 (CBM), 2004 U.S. Dist. LEXIS 5951 (S.D.N.Y. Apr. 6, 2004) ............. 24

Bernard v. United States,
 25 F.3d 98 (2d Cir. 1994) ........................................................................................... 3,4

Betts v. Shearman,
 751 F.3d 78 (2d Cir. 2014).......................................................................................... 16

Black v. Coughlin,
 76 F.3d 72 (2d Cir. 1996) ........................................................................................... 15

Blue v. Koren,
 72 F.3d 1075 (2d Cir. 1995)........................................................................................ 11

Bohmer v. State of New York,
 No. 06 Civ. 11370 (KTD), 2011 U.S. Dist. LEXIS 67767 (S.D.N.Y. June 21, 2011) .......... 22

Calamia v. City of  New York,
 879 F.2d 1025 (2d. Cir. 1989)...................................................................................... 5

Carter v. Artuz,
 Nos. 095 Civ. 2361 (CSH) (KNF) and 95 Civ. 4785 (CSH) (KNF), 1999 U.S. Dist.
 LEXIS 8338 (S.D.N.Y. June 1, 1999) ....................................................................... 15

Chamberlain v. City of White Plains,
 986 F. Supp. 2d 363 (S.D.N.Y. 2013)........................................................................ 15

**<u>Cases</u>**                                                                                       **<u>Pages</u>**

<u>Cifarelli v. Village of Babylon</u>,
   93 F.3d 47 (2d Cir. 1996) ............................................................................... 2

<u>City of Canton v. Harris</u>,
   489 U.S. 378 (1989)................................................................................... 20, 22

<u>City of Oklahoma City v. Tuttle</u>,
   471 U.S. 808 (1985)................................................................................... 22, 24

<u>Clark v. Comm. for Creative Non-Violence</u>,
   468 U.S. 288 (1984)......................................................................................... 19

<u>Connecticut ex rel. Blumenthal v. Crotty</u>,
   346 F.3d 84, 106 (2d Cir. 2003)....................................................................... 17

<u>Cunningham v. New York City</u>,
   No. 04 Civ. 10232 (LBS), 2007 U.S. Dist. LEXIS 69801 (S.D.N.Y. Sept. 18, 2007) ............ 6

<u>Cook v. Sheldon</u>,
   41 F.3d 73 (2d Cir. 1994) ................................................................................ 8

<u>Curiano v. Suozzi</u>,
   63 N.Y.2d 113 (1984) ...................................................................................... 8

<u>Curley v. Village of Suffern</u>,
   268 F.3d 655 (2d Cir. 2001)............................................................................. 12

<u>Daniels v. Williams</u>,
   474 U.S. 327 (1986)......................................................................................... 13

<u>Deshaney v.Winnebago County Dep't of Social Services</u>,
   489 U.S. 189 (1989)......................................................................................... 15

<u>Dickerson v. Napolitano</u>,
   604 F.3d 732 (2d Cir. 2010)............................................................................. 7

<u>Dorsett v. County of Nassau</u>,
   732 F.3d 157 (2d Cir. 2013)............................................................................. 11

<u>Dotson v. Farrugia</u>,
   No. 11 Civ. 1126 (PAE), 2012 U.S. Dist. LEXIS 41195(S.D.N.Y. Mar. 26, 2012) ............. 15

<u>Dwares v. City of New York</u>,
   985 F.2d 94 (2d Cir. 1993)............................................................................... 21

**Cases**                                                                                                          **Pages**


Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)................................................................... 16

Fabrikant v. French,
    691 F.3d 193 (2d Cir. 2012)................................................................... 12

Gonzalez v. City of New York,
    No. 14 Civ. 7721 (LGS), 2015 U.S. Dist. LEXIS 151810 (S.D.N.Y. Nov. 9, 2015) ............ 18

Graham v. Connor,
    490 U.S. 386 (1989)........................................................................... 9

Greenfield v. City of New York,
    No. 99 Civ. 2330 (AJP), 2000 U.S. Dist. LEXIS 1164 (S.D.N.Y. Feb. 3, 2000).................. 23

Griffin v. City of New York,
    880 F. Supp. 2d 384 (E.D.N.Y. 2012) ..................................................... 25

Guzman v. United States,
    No. 11 Civ. 5834 (JPO), 2013 U.S. Dist. LEXIS 131684 (S.D.N.Y. Feb. 14, 2013)............... 7

Irish v. City of New York,
    No. 09 Civ. 5568 (RMB), 2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. Dec. 6, 2010) ............. 8

Jackson v. City of New York,
    939 F. Supp. 2d 219 (E.D.N.Y. 2013) ..................................................... 14

Jackson v. Suffolk County,
    87 F. Supp. 3d 386 (E.D.N.Y. 2015) ...................................................... 17

Jiminez v. City of New York,
    No. 14Civ2994 (SAS), 2015 U.S. Dist. LEXIS (S.D.N.Y. Sept. 24, 2015) ......................... 13

Johnson v. Constantellis,
    221 Fed. Appx. 48 (2d Cir. 2007) .......................................................... 8

Jones v. Schneiderman,
    974 F. Supp. 2d 322 (S.D.N.Y. 2013)...................................................... 19

Kinsella v. Rumsfeld,
    320 F.3d 309 (2d Cir. 2003)................................................................ 3

Marin v. Viggiani,
    No. 92 Civ. 3836 (LMM), 1993 U.S. Dist. LEXIS 14056 (S.D.N.Y. Oct. 5, 1993)  ......... 5, 16

**Cases**                                                                        **Pages**

Martin v. City of New York,
11 Civ. 600 (PKC) (RLE), 2012 U.S. Dist. LEXIS 56632 (S.D.N.Y. Apr. 19, 2012)) .............. 20

Matican v. City of New York,
    524 F.3d 151 (2d Cir. 2008)................................................................................. 15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)........................................................................................... 3

Mesa v. City of New York,
    No. 09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y., Jan. 3, 2013).................. 9

Moffit v. Town of Brookfield,
    950 F.2d 880 (2d Cir. 1991).............................................................................. 14

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978).......................................................................................20-22

Morales v. Mackalm,
    278 F.3d 126 (2d Cir. 2002).............................................................................. 12

Morgan v. County of Nassau,
    720 F. Supp. 2d 229 (E.D.N.Y. 2010) ................................................................. 14

O'Brien v. Burrows,
    556 Fed. Appx. 2 (2d Cir. 2014)........................................................................ 18

O'Neill v. Krzeminski,
    839 F.2d 9 (2d Cir. 1988) ................................................................................. 13

Pearson v. Callahan,
    555 U.S. 223 (2009).......................................................................................... 17

Pitchell v. Callan,
    13 F.3d 545 (2d Cir. 1994)................................................................................ 25

Pluma v. City of New York,
    13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. Mar. 31, 2015) ................... 19

Posr v. Doherty,
    944 F.2d 91 (2d Cir. 1991)............................................................................... 3, 6

Rochin v. California,
    342 U.S. 165 (1952)......................................................................................... 13

**Cases** **Pages**

Savino v. City of New York,
 331 F.3d 63 (2d Cir. 2003).............................................................................. 3, 8

Segal v. City of New York,
 459 F.3d 207 (2d Cir. 2006).............................................................................. 20

Shamir v. City of New York,
 13 Civ. 5652 (CM) (AJP), 2014 U.S. Dist. LEXIS 97805 (S.D.N.Y. July 15, 2004) .......... 19

Simms v. City of New York,
 480 Fed. Appx. 627 (2d Cir. 2012)...................................................................... 23

Singer v. Fulton County Sheriff,
 63 F.3d 110 (2d Cir. 1995)............................................................................... 4, 6

Smith v. City of New York,
 No. 04Civ. 3286 (TPG), 2010 U.S. Dist. LEXIS 88774 (S.D.N.Y. Aug. 27, 2010) ............... 7

Spears v. City of New York,
 No. 10-CV-03461 (JG), 2012 U.S. Dist. LEXIS 145517 (E.D.N.Y. Oct. 9, 2012).............. 21

Texas v. Johnson,
 491 U.S. 397 (1989)....................................................................................... 19

Tompkins v. City of New York,
 50 F. Supp. 3d 426 (S.D.N.Y. 2014)..................................................................... 15

United States v. Rosario,
 237 F. Supp. 2d 242 (E.D.N.Y. 2002) ................................................................... 24

United States v. Walsh,
 194 F.3d 37 (2d Cir. 1999)................................................................................ 9

Vippolis v. Vill. of Haverstraw,
 768 F.2d 40 (2d Cir. 1985)................................................................................ 21

Walczyk v. Rio,
 496 F.3d 139(2d Cir. 2007)............................................................................ 16, 18

Weyant v. Okst,
 101 F.3d 845 (2d. Cir. 1996).......................................................................... 3-4

White-Ruiz v. City of New York,
 983 F. Supp. 365 (S.D.N.Y. 1997)....................................................................... 25

**Cases**                                                                 **Pages**

## Statutes **Pages**

28 U.S.C. §1367 ................................................................................. 35

42 U.S.C. §1983 ............................................................................ passim

Fed. R. Civ. P. 56 .......................................................................... 1, 3

N.Y. Gen. Mun. Law § 50-i(1)(c) ................................................... 25

N.Y. Gen. Mun. Law § 50-k(6) ...................................................... 25

N.Y. Penal Law § 145.00 ........................................................... 4, 17,

N.Y. Penal Law § 195.05 .................................................................. 5

N.Y. Penal Law § 240.20(5) ............................................................. 5

RCNY §4-04(c)(2) ............................................................................. 5

VTL §1102 ........................................................................................ 5

VTL§1156(a) ..................................................................................... 5

Defendants City of New York, Police Officer Anthony DiFrancesca, Police Officer Jerome Allen and Police Sergeant Brian Byrnes ("Defendants"), by their attorney, Zachary W. Carter, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

During the morning of October 14, 2011, plaintiff received a communication from the NYCLU on Twitter that there was a disturbance at Bowling Green, presumably related to Occupy Wall Street. (56.1 ¶ 10). In response, plaintiff proceeded to go to Bowling Green to act as a legal observer. (Id.¶ 11). At approximately 8:00 a.m., plaintiff was in the vicinity of Maiden Lane and Water Street, where there was a protest in progress. (Id. ¶ 13). When plaintiff proceeded onto Maiden Lane, he encountered several hundred protestors. (Id. ¶ 14). Plaintiff also saw a crowd of people surrounding a police van on Maiden Lane. (Id. ¶ 16). Plaintiff saw someone who appeared to be under arrest, so he came within three to five feet of the back of the van in order to obtain this person's biographical information and provide it to the National Lawyer's Guild. (Id. ¶¶ 19, 21-22).

As plaintiff approached the arrestee, Officer DiFrancesca was in the process of creating a perimeter with his police scooter between the surging crowd, which included plaintiff, and police officers as they were effectuating an arrest. (Id. ¶ 24). To create this barrier, Officer Di Francesca moved his scooter forward with his feet, without using the accelerator so the police could load arrestees safely into the van. (Id). As Officer DiFrancesca created this perimeter; he repeatedly used his scooter horn and yelled for the crowd to "get back". (Id). Although Officer DiFrancesca utilized his scooter horn and yelled orders to the crowd to stay back, plaintiff continued to advance towards the van. (Id. ¶ 21). Plaintiff eventually made contact with Officer

DiFrancesca's scooter. (Id. ¶ 26). Plaintiff then fell to the ground (Id. ¶ 28). Officer Francesca did not observe any part of plaintiff's feet under the scooter. (Id. ¶ 26) Plaintiff then kicked the scooter with his left foot and the scooter collided into a police van. (Id. ¶ 31). This collision caused damage to the scooter and van (Id. ¶¶ 32-33). As a result of Plaintiff kicking the scooter, he was placed under arrest. (Id. ¶ 34).

Officer DiFrancesca took hold of plaintiff, placed plaintiff on his stomach and used his night stick to hold plaintiff down until someone could assist him with applying handcuffs to plaintiff. (Id. ¶ 35). Officer DiFrancesca then tried to grasp plaintiff's hand. (Id. ¶ 36). When the officers attempted to place handcuffs on plaintiff, locked both of his hands together. (Id. ¶ 38). Consequently, it was a struggle for the officers to get plaintiff's arms behind his back. (Id. ¶ 40). Plaintiff thought it took the police officers one to three minutes to place him in handcuffs. (Id. ¶ 42).

Officers transported plaintiff to the 7th precinct. (Id. ¶ 45). While at the 7th Precinct, plaintiff walked around without any noticeable limp; was not walking gingerly; was not grimacing in pain; and did exhibit any type of distress. (Id. ¶¶ 47, 48). Plaintiff was then transported to Bellevue Hospital. (Id. ¶ 50). At the hospital, plaintiff complained of an injury to his right arm, bumps and bruises, a head wound, and pain in his ankles. (Id. ¶ 51). The doctor at the hospital did not prescribe any course of treatment for plaintiff's right arm; bumps and bruises; and pain in his ankles. (Id. ¶¶ 51-53). In fact, plaintiff did not have any swelling or deformity in his ankles. (Id. ¶ 55). Plaintiff received three to four stitches for the cut on his head. (Id. ¶ 57). Plaintiff did not receive any subsequent medical treatment. (Id. ¶ 58). After being released from police custody; plaintiff presented a voucher to retrieve his electronics, he believed that all of his electronic equipment was returned to him. (Id. ¶ 69).

## STANDARD OF REVIEW

A court must grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a); Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). A material fact is one that might affect the outcome of a suit under governing law. Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Finally, on a motion for summary judgment, the Court must disregard the non-movant's version of events where it "is so utterly discredited by the record" and the videotape. Scott v. Harris, 550 U.S. 372, 380-81 (2007).

## ARGUMENT

THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF

Defendants are entitled to summary judgment on plaintiff's false arrest, false imprisonment and unreasonable search and seizure claims because plaintiff's arrest was supported by probable cause.

A.   Plaintiff's False Arrest and False Imprisonment Claims Fail as a Matter of Law.

In New York, the tort of false arrest is synonymous with that of false imprisonment. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). In addition, a § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law. See Weyant v. Okst, 101 F.3d 845, 852 (2d. Cir. 1996) (citations omitted). In order to state a claim for false arrest and imprisonment, plaintiff must prove: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir.

1994)); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).   "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" Weyant, 101 F.3d at 852. (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).   "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer, 63 F.3d at 118.

Here, there was probable cause to arrest plaintiff, *inter alia*, for Criminal Mischief in the fourth degree. Under N.Y. Penal Law § 145.00(3), a person is guilty of criminal mischief in the fourth degree, in part, when: "having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: recklessly damages property of another in an amount exceeding two hundred fifty dollars". Id. It is undisputed that on October 14, 2011, while lying on the on at an OWS demonstration, plaintiff recklessly kicked a police scooter into a van causing damage to both vehicles.   (56.1 ¶¶31- 33, 75, 84. The kick plaintiff administered to the scooter caused damage not only to that vehicle but also the police van which exceeded two hundred and fifty dollars. Id, ¶33.   From the perspective of the officers that observed plaintiff's conduct, they believed he had no grounds to believe he had such right and in fact did not give permission for this act. Further, it would be reasonable for any officer to believe that plaintiff's actions were reckless given the presence of a large number of people in close proximity to both vehicles. Plaintiff's actions of kicking over a vehicle, with significant weight could have injured several individuals. Based on the foregoing, there was probable cause to arrest plaintiff under N.Y. Penal Law § 145.00(3).

Likewise, plaintiff could have been charged with the Obstruction of Governmental Administration, Penal Law §195.05 for failing to heed Officer DiFrancesca's

orders for plaintiff and other members of the crowd to "back up"[1].  (56.1 ¶¶24-25). As Officer Di

Francesca attempted to create a perimeter between the surging crowd and officers attempting to

effectuate the arrest of an individual; plaintiff ignored these repeated orders and concededly

edged closer to the back of the police van. Id. ¶¶21, 22. Additionally, plaintiff's subjective

reasoning for wanting to get a closer vantage point to the van is of no consequence to the

probable cause analysis. See Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995)

("[M]otivation is not a consideration in assessing probable cause.").

Similarly, there was probable cause to arrest plaintiff under Penal Law

§240.20(5), which makes it unlawful to amongst other things to intentionally obstruct

vehicular/pedestrian traffic or recklessly create a risk thereof; VTL §1102, which required

plaintiff to comply with police orders; VTL §1156(a) which required plaintiff to walk on the

sidewalk and not in the roadway; and RCNY §4-04(c)(2) which prohibited plaintiff from

crossing "any roadway at an intersection except within a cross-walk". Based on the foregoing,

plaintiff's false arrest claim should be dismissed.

B.     Plaintiff's Unreasonable Search and Seizure Claim Fails as a Matter of Law.

The question of whether plaintiff's seizure was unreasonable or illegal turns on

whether defendants had sufficient probable cause to lawfully arrest plaintiff.  Marin v. Viggiani,

No. 92 Civ. 3836 (LMM), 1993 U.S. Dist. LEXIS 14056, at *17 (S.D.N.Y. Oct. 5, 1993).

Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy

information sufficient to warrant a person of reasonable caution in the belief that an offense has

been committed by the person to be arrested.  Calamia v. City of  New York, 879 F.2d 1025,

1032 (2d. Cir.1989) (citations omitted).   As set forth in subpoint IA, *supra*, defendants had

---

[1]  Under N.Y. Penal Law §195.05 "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]"

probable cause to arrest plaintiff.  Further, plaintiff's search and seizure claim are duplicative of his claims for false arrest/false imprisonment as they are not independent to the seizure of facts which caused his arrest. Accordingly, this claim is subsumed and should be dismissed. To the extent plaintiff is attempting to allege an unlawful search claim based on his electronic items being returned to him "shrink-wrapped", this should also be disregarded a conclusory and unsupported by the record. Based on the foregoing this claim should be dismissed.

### PLAINTIFF'S ABUSE OF PROCESS AND MALICIOUS PROSECUTION CLAIMS MUST BE DISMISSED

A.      <u>Plaintiff's Malicious Prosecution Claim Fails as a Matter of Law.</u>

To prove a claim of malicious prosecution, a plaintiff must establish that: "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." <u>Posr v. Doherty</u>, 944 F.2d 91, 100 (2d Cir. 1991) (citations omitted).  For claims arising under 42 U.S.C. §1983, a plaintiff must also establish a deprivation of liberty consistent with the concept of seizure.  <u>Cunningham v. New York City</u>, No. 04 Civ. 10232 (LBS), 2007 U.S. Dist. LEXIS 69801, at *12 (S.D.N.Y. Sept. 18, 2007) (citing <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116 (2d. Cir. 1995)).  A plaintiff must satisfy all elements of this claim in order to survive a motion for summary judgment.  Plaintiff cannot establish a malicious prosecution claim because defendants did not initiate or continue the prosecution against him; defendants had probable cause for his prosecution; and plaintiff's prosecution was not instituted with actual malice.

i.      <u>Defendants Did Not Initiate or Continue a Criminal Proceeding Against Plaintiff</u>.

Plaintiff's malicious prosecution claim fails because defendants did not initiate or continue plaintiff's underlying criminal prosecution.  "New York law imposes a presumption

that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant." Guzman v. United States, No. 11 Civ. 5834 (JPO), 2013 U.S. Dist. LEXIS 131684, at *19 (S.D.N.Y. Feb. 14, 2013) (citation omitted). "[A] malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police." Alcantara v. City of New York, 646 F. Supp. 2d 449, 457 (S.D.N.Y. June 23, 2009) (citations omitted). Further, "once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." Smith v. City of New York, No. 04 Civ. 3286 (TPG), 2010 U.S. Dist. LEXIS 88774, at *22 (S.D.N.Y. Aug. 27, 2010) (citing Alcantara, 646 F. Supp. 2d at 459).

Plaintiff has not proffered any evidence to overcome the presumption that the Manhattan District Attorney's Office exercised independent judgment in deciding to prosecute him.  That judgment can be demonstrated by the fact that the plaintiff was prosecuted on different charges than his arrest.  (56.1 ¶¶ 44, 62).  There is no evidence that any of the defendants encouraged or influenced the prosecutor to make any decision or otherwise played an active role in plaintiff's criminal prosecution.  Accordingly, plaintiff cannot satisfy the initiation element of his malicious prosecution claim.

ii.     There was Probable Cause for the Criminal Prosecution Against Plaintiff.

Plaintiff's malicious prosecution claim fails because there was probable cause for the prosecution.  Probable cause is a complete defense to an action for malicious prosecution in New York.  Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010).  Further, in the context of malicious prosecution, if probable cause existed at the time of arrest, it continues to exist at

the time of prosecution unless undermined by the discovery of some intervening fact.  Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007) (citation and internal quotation omitted).  As set forth in Point I, *supra*, on October 14, 2011, there was probable cause to arrest plaintiff for criminal mischief in the fourth degree.  Plaintiff has not proffered any evidence that probable cause dissipated between the time of his arrest and the commencement of his criminal prosecution.  Plaintiff cannot satisfy the third prong of the malicious prosecution test.

B.      Plaintiff's Abuse of Process Claim Fails as a Matter of Law.

Plaintiff cannot sustain his abuse of process claim.  To sufficiently plead an abuse of process claim under New York law, a plaintiff must show that defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994); Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984)).  Furthermore, probable cause provides sufficient "justification" to bar an abuse of process claim.  Irish v. City of New York, No. 09 Civ. 5568 (RMB), 2010 U.S. Dist. LEXIS 130466, at *16 (S.D.N.Y. Dec. 6, 2010) (citation omitted).  Plaintiff did not plead or proffer any evidence that defendants used the legal process for a collateral or ulterior purpose or objective.  This failure is fatal to plaintiff's abuse of process claim.  Savino, 331 F.3d at 78.  In addition, as set forth in Point I, defendants had probable cause to arrest plaintiff.  Accordingly, defendants should be granted summary judgment on plaintiff's abuse of process claim.

DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S FORCE CLAIM

Defendants are entitled to summary judgment on plaintiff's claim for excessive force because any force used was reasonable and *de minimis* under the circumstances.  Defendants note that to the extent plaintiff is pleading this claim under state law, it is untimely.

To the extent it is a constitutional claim, it is duplicative, and can be analyzed as an excessive force claim.

When an excessive force claim arises in the context of an arrest, it invokes the protections of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394 (1989). The right to effectuate an arrest includes the right to use some degree of force. Mesa v. City of New York, No. 09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097, at *54 (S.D.N.Y., Jan. 3, 2013) (citation omitted). The inquiry under the Fourth Amendment is whether the force used was objectively reasonable under the circumstances. Graham, 490 U.S. at 399. This reasonableness standard provides police officers with proper allowances to make necessary decisions in "tense, uncertain, and rapidly evolving" circumstances. Id. at 396-397.

To have an actionable excessive force claim, plaintiff must establish that the alleged use of force is "objectively sufficiently serious or harmful enough." United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999). *De minimis* uses of force does not suffice as a constitutional violation. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal citation omitted).

Defendant DiFrancesca did not use excessive force against plaintiff with his police scooter. To the extent that defendant Di Francesca's police scooter came into contact with plaintiff, such conduct constituted negligence at best, which is not actionable under § 1983.

Officer DiFrancesca pushed his scooter with his feet, without using the accelerator, to create a perimeter between the crowd and the police van to protect the safety of the crowd and so the police could load arrestees safely into the van. (56.1 ¶ 24). Officer DiFrancesca was travelling so slow that the speedometer on the scooter did not register a rate of

9

speed.  (Id. ¶ 25).   Defendant DiFrancesca's police scooter inadvertently made contact with plaintiff when plaintiff stepped in front of the scooter.    (Id. ¶ 26; Deposition of Anthony DiFrancesca, at 82:23-83:10, 91:5-12).   Plaintiff then fell to the ground.  (Id. ¶ 28).   Plaintiff admitted that he could not state that Officer Francesca intentionally contacted him with his police scooter.  (Id. ¶ 27).

　　　　　When plaintiff was initially on the ground, his left foot merely abutted the front tire of DiFrancesca's police scooter while his right foot was not within the scooter's path.  (56.1 ¶ 29; Decl., Ex E1, E2, E3).   Subsequently, however, plaintiff moved his right foot to the front of the rear tire while removing his left foot out of the police scooter's path on his own volition.  (56.1 ¶ 30).  Plaintiff then kicked DiFrancesca's scooter with his left foot, causing it to collide into a New York City Police Department van.  (Id. ¶ 31; Decl., Ex C).   On October 14, 2011 at 1:02 p.m., just several hours after the incident, plaintiff walked around the 7th Precinct without a noticeable limp; did not walk gingerly; did not grimace in pain; and did not exhibit any type of distress.  (56.1 ¶¶ 47-48; Decl., Ex I).  Further, the treating physician at Bellevue Hospital did not provide medical treatment for plaintiff's ankles.  (56.1 ¶ 54; Decl., Ex J).   In fact, plaintiff had no swelling or deformity in his ankles, and merely had a soft tissue injury.  (56.1 ¶¶ 55, 56; Decl., Ex J).  Notably, plaintiff did not raise this incident in his pre-motion application letter to support his excessive force claim.  (Civil Docket, Entry No. 29).  Accordingly, to the extent force was used, such force was *de minimis* and the use of such force was negligent.

　　　　　To the extent any force was used on plaintiff in effectuating his arrest, such force was reasonable under the circumstances.  Plaintiff violently kicked a police scooter with such force that he caused damage to both the police scooter and a police van in which the scooter collided into.  (56.1 ¶¶ 31-33).  Officer DiFrancesca then pulled plaintiff away from the crowd,

placed plaintiff on his stomach and used his night stick to hold plaintiff until someone could assist him with applying handcuffs to plaintiff.  (Id. ¶ 35).  When Officer DiFrancesca proceeded to arrest plaintiff, plaintiff put his right hand was over his head and moved around.  (Id. ¶¶ 37, 39).  It was a struggle for the police officers to get plaintiff's arms behind his back.  (Id.  ¶ 40).  By plaintiff's own admission, he thought it took the police officers one to three minutes to place him in handcuffs.  (Id. ¶ 40).  Due to plaintiff's violent conduct and his refusal to be handcuffed, to the extent any force was used, it was *de minimis*, reasonable and incidental to plaintiff's arrest; therefore, plaintiff cannot sustain a claim for excessive force.

## PLAINTIFF'S RETALIATION CLAIM FAILS

Plaintiff's First Amendment retaliation claim fails because plaintiff did not sufficiently plead that the actions of the officers were motivated or caused by his exercise of his First Amendment rights; and probable cause existed for his arrest.  In order to plead a First Amendment retaliation claim, a plaintiff must show that he: 1) has a right protected by the First Amendment; 2) the defendant's actions were motivated or substantially caused by his exercise of that right; and 3) the defendant's injured plaintiff.  Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

A.     There is no Evidence that Defendants' Actions Were Motivated or Substantially caused by Plaintiff's First Amendment Right.

*Assuming arguendo* that this Court rules that plaintiff engaged in constitutionally protected speech, plaintiff does not allege that defendants' actions were motivated or substantially caused by the exercise of his First Amendment right.   A First Amendment retaliation claim requires evidence of the "actual mental state" of the defendants.  Allen v. City of New York, No. 03 Civ. 2829 (KMW) (GWG), 2007 U.S. Dist. LEXIS 15, at *72 (S.D.N.Y. Jan. 3, 2007).  More specifically, "[s]pecific proof of improper motivation is required in order for

plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (citing Blue v. Koren, 72 F.3d 1075, 1082-83 (2d Cir. 1995)).  This evidence must constitute "non-conclusory allegations establishing . . . that there was a causal connection between the protected speech and the adverse action." Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002).  To the extent that plaintiff attempts to show that defendants' actions were motivated or substantially caused by the exercise of his First Amendment right by alleging that members of the NYPD had been aggressive and violent with demonstrators and those thought to be associated with them, such as legal observers (Compl., Exhibit A, ¶ 11), this does not suggest that the officers' were substantially motivated by a desire to retaliate against plaintiff's legal observer activities.  In fact, defendants could not have been motivated by plaintiff's role as a legal observer.  No defendant saw him wearing a legal observer hat. (56.1 ¶ 85).  The video evidence confirms that by the time any interaction with defendants had started, plaintiff was no longer even wearing his legal observer cap, the only outward sign of his only claimed First Amendment connected activity at this event.  Accordingly, plaintiff cannot sustain a First Amendment retaliation claim.

      B.     Plaintiff's Arrest is Supported by Probable Cause.

If the Court finds that there was probable cause to arrest the plaintiff, defendants are entitled to summary judgment on the First Amendment retaliation claim.  Probable cause is a complete defense to a claim of First Amendment retaliation.  Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).  Based on all of the foregoing, defendants should be granted summary judgment on plaintiff's First Amendment retaliation claim.

**PLAINTIFF HAS NO DUE PROCESS CLAIM**

Plaintiff's Due Process claim fails as a matter of law.  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular

sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (citation and internal quotations omitted). Plaintiff alleges only that, "By their conduct and actions . . . in violating rights to due process of plaintiff" defendants caused injury and damage in violation of plaintiff's constitutional rights. (Compl., Exh. A, at ¶ 47). There are no facts alleged, and the evidence does not support, an independent claim under this theory. Defendants should be granted summary judgment on plaintiff's due process claim on the ground that such claim is duplicative of his claims under the First and Fourth Amendments.

Even assuming plaintiff's claim was not duplicative, that claim would fail as a matter of law. A substantive due process claim is only appropriate where governmental conduct "shocks the conscience[,]"transgresses the "decencies of civilized conduct[,]" and goes well beyond negligence. <u>Rochin v. California</u>, 342 U.S. 165, 172-73 (1952); <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986). It is evident that defendants' conduct does not "shock the conscience" or transgress the "decencies of civilized conduct." Therefore, plaintiff's Due Process claim fails.

## PLAINTIFF'S FAILURE TO INTERVENE AND TO SUPERVISE CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's failure to intervene claim fails as a matter of law. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988). Liability, however, may only attach when, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." <u>Jiminez v. City of New York</u>, No. 14 Civ 2994 (SAS), 2015 U.S. Dist. LEXIS, at *16-17 (S.D.N.Y. Sept. 24, 2015) (citation omitted). Further, a  plaintiff must

allege sufficient facts in support of a failure to intervene claim.  See, e.g., Morgan v. County of Nassau, 720 F. Supp. 2d 229, 240 (E.D.N.Y. 2010) (holding that plaintiff alleged insufficient facts to state a failure to intervene claim against the two individual defendant police officers, particularly since one of the officers was alleged to have used excessive force, and plaintiff did not allege any facts suggesting that the other officer observed him use such force).

Plaintiff does not allege that one or more individual defendants observed another defendant member of service violate plaintiff's constitutional rights but failed to intervene. (Compl., Exh. A, at ¶ 47).  Thus, plaintiff's conclusory allegations cannot support his claim.

On or about February 1, 2016, plaintiff alleged, for the first time, specific facts to support his claim for the failure to intervene.    (Civil Docket, Entry No. 29).  A defendant, however, may not be held liable for the failure to intervene if plaintiff alleged that the defendant directly participated in the underlying unconstitutional conduct.  Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013).  In plaintiff's pre-motion application letter plaintiff alleged that, "[plaintiff was] clearly overpowered by multiple officers, including Detective DiFrancesca and defendant Sergeant Brian Byrnes (who, along with defendant Officer Jerome Allen, did nothing to intervene to prevent this from occurring, despite it occurring in their immediate presence."  (Civil Docket, Entry No. 29)[2].  Furthermore, in the complaint, plaintiff alleged that Officer Allen and Sergeant Byrnes, "manhandled and attacked Plaintiff, including with the use of police batons, and including by banging Plaintiff's head into the roadway."

---

[2] This reference to Officer Allen is the closest plaintiff has come to asserting any direct theory against him.  A defendant's personal involvement in a constitutional deprivations is a prerequisite to an award of damages under § 1983.  Ashcroft v. Iqbal, 556 U.S. 662, 676-677 (2009); Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991).  Defendant Allen had no personal involvement in plaintiff's arrest and did not use any force on him. Defendant Allen processed plaintiff's arrest, but he was merely the assigned arresting officer, and the details of plaintiff's arrest were provided to him by defendant DiFrancesca.  (Deposition of Anthony DiFrancesca, at 191:17-192:15; 240:19-241:2).  Accordingly, defendant Allen is entitled to summary judgment on plaintiff's false arrest and excessive force claims; and had no reasonable opportunity to intervene to prevent any alleged violation.

(Compl., Exh. A, at ¶ 16).   Accordingly, defendants are entitled to summary judgment on plaintiff's failure to intervene claim because plaintiff alleged that the individual defendants participated in the underlying arrests and used force against him.[3]

Plaintiff failed to state a viable supervisory liability claim.  In order to sustain a supervisory-liability claim, a plaintiff must establish that a subordinate officer violated plaintiff's rights.  Tompkins v. City of New York, 50 F. Supp. 3d 426, 434 (S.D.N.Y. 2014).  A supervisor can be held liable if he or she was personally involved in the alleged deprivation.   Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).    This is particularly true following the Supreme Court's decision in Ashcroft v. Iqbal, which held that, "In a § 1983 suit . . . the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, is only liable for his or her own misconduct."   556 U.S. 662, 677 (2009).   A separate claim for supervisory liability is duplicative to the extent a plaintiff pleads the same factual allegations in support of other claims.  Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 394 (S.D.N.Y. 2013).   Further, conclusory allegations are not sufficient to establish supervisory liability.  Carter v. Artuz, Nos. 95 Civ. 2361 (CSH) (KNF) and 95 Civ. 4785 (CSH) (KNF), 1999 U.S. Dist. LEXIS 8338, at *11 (S.D.N.Y. June 1, 1999).

In Dotson v. Farrugia, No. 11 Civ. 1126 (PAE), 2012 U.S. Dist. LEXIS 41195, at *16-18 (S.D.N.Y. Mar. 26, 2012), plaintiff brought a supervisory liability claim, alleging that supervisors failed "to remedy the wrongs committed by their subordinates, [or] properly train, screen, supervise, or discipline their subordinates." The Court dismissed that claim on the ground that plaintiff "merely recite[d] the legal elements of a successful § 1983 claim

---

[3] Any failure to protect claim is defective as there is no allegation of wrongdoing against plaintiff by a private citizen.  See Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 196-198, 201, 203 (1989); Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008).

for supervisory liability" without alleging sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at *17-18.

Plaintiff alleged that defendant Byrnes failed to remedy the wrongs committed by his subordinates and failed to properly train, supervise or discipline his subordinates (Compl., Exh. A, at ¶ 50).  These allegations are not legally sufficient.  First, neither defendant Byrnes nor his subordinates violated plaintiff's constitutional rights.   Second, plaintiff's conclusory allegations cannot support his supervisory liability claim.   Finally, plaintiff's claim for supervisory liability against defendant Byrnes is duplicative to the extent that plaintiff's factual allegations for that claim were also used to support his false arrest and excessive force claims against defendant Byrnes for his own actions.   Accordingly, defendants must be granted summary judgment on plaintiff's supervisory liability claim.

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

A.   Defendants are Entitled to Qualified Immunity With Respect to Plaintiff's False Arrest, Unreasonable Search and Seizure, Malicious Prosecution and Abuse of Process Claims.

Defendants should be granted qualified immunity with respect to plaintiff's false arrest, unreasonable search and seizure, malicious prosecution and abuse of process claims.   An officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause if the officer can establish there was "arguable probable cause" to arrest.  Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).  Thus, a police officer is entitled to qualified immunity "if either (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met." Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007).  This test applies to unreasonable search and seizure claims (see, e.g., Marin v. Viggiani, No. 92 Civ. 3836 (LMM), 1993 U.S. Dist. LEXIS 14056, at *17, *25-27  (S.D.N.Y. Oct. 5, 1993)); malicious prosecution claims (see, e.g.,  Betts

v. Shearman, 751 F.3d 78, 82-83 (2d Cir. 2014)); and abuse of process claims (see, e.g., Jackson v. Suffolk County, 87 F. Supp. 3d 386, 410 n.14 (E.D.N.Y. 2015)).   In deciding whether an officer's conduct was "objectively reasonable," the "[courts] do not consider the subjective intent, motives, or beliefs" of the officer.   Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 106 (2d Cir. 2003).   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted).

As set forth in Point I, *supra*, defendants had probable cause to arrest plaintiff for criminal mischief in the fourth degree on October 14, 2011.  If the Court concludes that probable cause was absent, however, there was still "arguable probable cause" to arrest plaintiff.  It was objectively reasonable to believe that plaintiff committed the crime of criminal mischief in the fourth degree, in violation of Penal Law § 145.00, by causing damage to property of another. Plaintiff violently kicked an NYPD police scooter with his left foot, causing the scooter to collide into a police van.  (56.1 ¶ 31).   Consequently, the right mirror, right brake light, and right metal brace on the windshield to the scooter were damaged.  (Id. ¶ 32).   In addition, plaintiff caused damage to the police van when the scooter collided into it.  (Id. ¶ 33).   A reasonable officer could have inferred from these facts that plaintiff violated N.Y. Penal Law §§ 145.00(1). Even if defendants' determination was in error, they would still be entitled to qualified immunity because they did not act incompetently or knowingly violate the law.

**B.**   Defendants are Entitled to Qualified Immunity For Plaintiff's Excessive Force Claim.

Defendants are entitled to qualified immunity with respect to plaintiff's excessive force claim.  In the excessive force context, summary judgment should be granted on the basis of qualified immunity if the defendant shows that their acts are not clearly established as unlawful or that no reasonable jury, viewing the evidence in the light most favorable to the plaintiff, could

conclude that the defendant's actions were objectively unreasonable.  O'Brien v Burrows, 556 Fed. Appx. 2,3 (2d Cir. 2014).

Any force that the individual defendants used to effectuate plaintiff's arrest was *de minimis*, reasonable and incidental to plaintiff's arrest.  Defendant DiFrancesca's police scooter inadvertently made contact with plaintiff when plaintiff stepped in front of the scooter. (56.1 ¶ 26; Deposition of Anthony DiFrancesca, at 82:23-83:10, 91:5-12).  Plaintiff even admitted that he could not state that Officer Francesca intentionally contacted him with his police scooter.  (Id. ¶ 27).  Accordingly, any force used by defendants in effectuating plaintiff's arrest was objectively reasonable, and in particular all force from any contact with the scooter, entitling the individual defendants to qualified immunity.

**C.**     Defendants are Entitled to Qualified Immunity on Plaintiff's Retaliation Claim.

Defendants should be granted qualified immunity as to plaintiff's claim for First Amendment Retaliation because the defendant officers had arguable probable cause to arrest plaintiff.   The arguable probable cause test enunciated in Walczyk applies to First Amendment retaliation claims (Allen, 2007 U.S. Dist. LEXIS  at *66-68).

Alternatively, the individual defendants are entitled to qualified immunity on plaintiff's First Amendment Retaliation claim because there is no clearly established right to photograph and publicly record the police or act as an observer.  In order for a right to be "clearly established," a principle must be embodied in the "decisional law of the Supreme Court and the [Second Circuit]."  Shechter v. Comptroller of N.Y., 79 F.3d 265, 271 (2d Cir. 1996) (internal quotation marks omitted).  In the Second Circuit, there is no clearly established right to photograph and publicly record police conduct.  Gonzalez v. City of New York, No. 14 Civ. 7721 (LGS), 2015 U.S. Dist. LEXIS 151810, at *18-19 (S.D.N.Y. Nov. 9, 2015).

18

Similarly, plaintiff's conduct as a legal observer is not so clearly established as a First Amendment right to overcome qualified immunity. "For conduct to be entitled to constitutional protection, it must be 'sufficiently imbued with the elements of communication' which requires, 'at the very least, an intent to convey a particularized message along with a great likelihood that the message will be understood by those viewing it.'" Jones v. Schniederman, 974 F. Supp. 2d 322, 333 (S.D.N.Y. 2013) (quoting Texas v. Johnson, 491 U.S. 397, 404 (1989). "[S]ymbolic expression through conduct is protected by the First Amendment when in context, [it] would reasonably be understood by the viewer to be communicative." Shamir v. City of New York, No. 13 Civ 5652 (CM) (AJP), 2014 U.S. Dist. LEXIS 97805, at *13 (S.D.N.Y. July 15, 2014) (citing Clark v. Comm. for Creative Non-Violence, 468 U.S. 288, 294 (1984)). Plaintiff was serving as a legal observer in connection with demonstrations that occurred on the morning of October 14, 2011. (56.1 ¶ 16). On October 14, 2011, plaintiff did not participate in the protest that occurred near the vicinity of Maiden Lane and Water Street (Id. ¶ 16) and did not otherwise allege that he engaged in any expressive conduct. In fact, the role of a legal observer is to provide visibility to law enforcement and government officials that non-partisan observers are present during demonstrations. (Id. ¶ 3). Clearly, the part played by a legal observer is not akin to activity protected by the First Amendment, and certainly does not rise to the high level of conduct so clearly established by controlling precedent that plaintiff can overcome qualified immunity.

On October 14, 2011, plaintiff did not participate in a protest and was not a member of the Occupy Wall Street movement, but an off duty neutral observer for the protest. (Id. ¶ 16). Accordingly, plaintiff was merely a bystander who did not engage in expressive conduct. (See Pluma v. City of New York, 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134,

at *19, 22 (S.D.N.Y. Mar. 31, 2015).  Although plaintiff took pictures and video footage of Occupy Wall Street demonstrations that occurred on October 14, 2011 (Rule 56.1 ¶ 67), that is not an activity protected by the First Amendment that is so clearly established plaintiff can overcome qualified immunity.

## DEFENDANT CITY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MONELL CLAIM

Plaintiff has failed to state a cognizable municipal liability claim against defendant City of New York because defendants did not violate any of plaintiff's constitutional rights and the complaint otherwise fails to articulate any grounds for municipal liability.

First, as discussed, *supra*, defendant City did not violate plaintiff's individual constitutional rights and therefore, his claim of municipal liability fails as a matter of law.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Second, a municipal entity may be found liable under § 1983 "only where the municipality itself causes the constitutional violation at issue."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).  To state a valid claim against a municipality, a plaintiff must establish that "unlawful action was implemented or executed pursuant to a governmental policy or custom."  Martin v. City of New York, No. 11 Civ. 600 (PKC) (RLE), 2012 U.S. Dist. LEXIS 56632, at *30-31 (S.D.N.Y. Apr. 19, 2012) (citing Monell, 436 U.S. at 690-91).  A plaintiff may demonstrate the existence of a municipal policy or custom by establishing:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees

Spears v. City of New York, No. 10-CV-03461 (JG), 2012 U.S. Dist. LEXIS 145517, at *37-38 (E.D.N.Y. Oct. 9, 2012).  Absent proof of these elements, proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell.  Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

A.    Plaintiff Failed to Allege that a Policy of the City Caused His a Constitutional Violations.

Plaintiff failed to proffer evidence that a policy of the defendant City caused his alleged constitutional violations.  "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights."  Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).

The Complaint contains no proof of a municipal policy or practice that was the proximate cause of plaintiff's alleged constitutional injuries.  (See generally, Compl., Exh."A").  The basis of the allegations in the Complaint stem from a single incident that occurred on October 14, 2011.  (See Generally, Compl., Exhibit A).  Even if the Court were to read the Complaint as pleading claims of false arrest, malicious prosecution and excessive force, plaintiff has not proffered any evidence that these claims were based on a policy, custom, or practice of the City.  As such, plaintiff has failed to plead, and cannot prove his municipal liability claim.

B.    Plaintiff Has No Evidence that Defendant City Caused His Constitutional Injuries by Failing to Train, Screen, Supervise or Discipline Employees and Police Officers.

Plaintiff failed to proffer evidence that defendant City caused his purported constitutional injuries by failing to train, screen, supervise or discipline employees and police officers.   There must be a direct causal link between the City's supposed hiring, training, instruction, retention and/or supervision of its employees and plaintiff's purported injury.  See

City of Canton, 489 U.S. at 385.   "[A] plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees."   Bohmer v. State of New York, No. 06 Civ. 11370 (KTD), 2011 U.S. Dist. LEXIS 67767, at *9 (S.D.N.Y. June 21, 2011) (citation omitted).   "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."   Dwares, 985 F.2d at 100.

In the complaint, plaintiff set forth conclusory, generalized allegations that the City of New York's policies, practices, customs and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and failing to inform the individual defendants' supervisors of their need to train, screen supervise or discipline those defendants were a direct and proximate cause of the alleged unconstitutional conduct.   (See Compl., Exhibit A, at ¶ 54).   As a result of plaintiff's failure to submit proof of the existence of such policy, practice, custom or usage, or that same caused the alleged unconstitutional conduct in this case, plaintiff did not state a legally sufficient Monell claim.

**C.**      Plaintiff Failed to Allege that Defendant City Caused His Purported Constitutional Injuries by Encouraging, Sanctioning and/or Engaging in the Violation or Retaliation of His First and Fourth Amendment Rights.

Plaintiff failed to offer sufficient factual allegations that defendant City has policies, practices, customs and usages of encouraging, sanctioning and/or engaging in the violation or retaliation of individuals' First and Fourth Amendment rights.   (Compl., Exh. A, at ¶¶ 55, 58-60).   In the complaint, plaintiff alleged one isolated incident of misconduct stemming from his October 14, 2011 arrest.   (See, generally, Compl., Ex. A).   Thus, for that reason alone, plaintiff's municipal liability claim fails as a matter of law.   See Dwares, 985 F.2d at 100; Tuttle, 471 U.S. at 823-24.

In addition, plaintiff relies on the unproven allegations of plaintiffs in other civil actions in an attempt to state a municipal liability claim.   A complaint's references to other actions merely establishes that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights, not that those violations actually occurred.  See Simms v. City of New York, 480 Fed. Appx. 627, 630 (2d Cir. 2012).  Further, lawsuits cited by a plaintiff in a complaint that did not result in an adjudication of liability are insufficient to plausibly support an inference of a widespread custom, even if those complaints involved comparable conduct to the conduct alleged in the lawsuit.  Tieman v. City of Newburgh, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *48 (S.D.N.Y. Mar. 26, 2015).  In addition, a clause in a settlement agreement that the agreement "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations" precludes use of the terms of the settlement in a subsequent litigation.  Greenfield v. City of New York, No. 99 Civ. 2330 (AJP), 2000 U.S. Dist. LEXIS 1164, at *38-39 (S.D.N.Y. Feb. 3, 2000).

When plaintiff retrieved his personal property from the precinct, his electronic devices were shrink-wrapped.  (Compl., Exh. A, at ¶ 40).  Consequently, plaintiff claimed that his electronic devices were unlawfully searched or otherwise tampered with for intelligence-gathering purposes.  (Compl., Exh. A, at ¶¶ 41-42).  Plaintiff cited two cases to demonstrate that the NYPD engaged in unlawful intelligence-gathering.  (Compl., Exh. A, at ¶ 43).  However, those cases were settled without any finding of liability against the defendants.   Further plaintiff did not allege that the City of New York had a policy or practice of searching electronic devices that were seized from arrestees and then returning them to the arrestees shrink-wrapped. Therefore, plaintiff does not have a viable municipal liability claim for the unlawful search of, and/or tampering with, his electronic equipment.

Plaintiff cited forty-five additional cases[4] in the complaint to support his claim that defendant City encouraged, sanctioned and/or engaged in the violation of individuals' First and Fourth Amendment rights.  (See Compl., Ex. A, at ¶ 60).  However, none of the forty-five cases cited by plaintiff resulted in an adjudication of liability.  In fact, each of those with any final judicial or adjudicated decisions held that the police acted properly.  Therefore, those cases do not constitute evidence of an unconstitutional municipal policy.

D.    Plaintiff Failed to Allege that Defendant City Caused A Constitutional Violations by Encouraging and or Sanctioning the Cover-Up of Members' of Service Misconduct.

Plaintiff failed to sufficiently allege in his Complaint that defendant City has policies, practices, customs and/or usages of encouraging and/or sanctioning the cover-up of members' of service misconduct.  First, as set forth *supra*, plaintiff alleged one isolated incident of misconduct stemming from his October 14, 2011 arrest, which generally does not give rise to an unlawful custom or policy.  See Dwares, 985 F.2d at 100; Tuttle, 471 U.S. at 823-24.

Second, plaintiff relies upon the unproven allegations in five civil actions which do not support a finding of municipal liability in this case.  See Tieman, 2015 U.S. Dist. LEXIS, at *48.  First, in Ariza v. City of New York, 139 F.3d 132, 133-34 (2d Cir. 1998) (Compl., Ex. A, at ¶ 57(a)), the Second Circuit denied plaintiff's appeal after a jury in the District Court action reached a verdict for the defense.  Second, in Barry v. New York City Police Department, No. 01 Civ. 10627 (CBM), 2004 U.S. Dist. LEXIS 5951, at *28-34 (S.D.N.Y. Apr. 6, 2004) (Compl. Ex. A, at ¶ 57(d)), the Court dismissed plaintiff's § 1983 and municipal liability claims with prejudice on summary judgment.  Third, in United States v. Rosario, 237 F. Supp. 2d 242 (E.D.N.Y. 2002) (See Compl., Exh. A, at ¶ 57(c)), plaintiff did not bring a claim for municipal

---

[4] Plaintiff listed forty-seven cases in ¶ 60 of his Complaint.  Two cases, however, were duplicative, i.e., Clarke, et al. v. City of New York, et al., 13 Civ. 5303 (RWS) and Ball v. City of New York, et al., 13 Civ. 5563 (RWS).

liability.  Fourth, in <u>Griffin v. City of New York</u>, 880 F. Supp. 2d 384, 390 (E.D.N.Y. 2012), the Court did not find, and plaintiff did not otherwise submit proof, that there was an unconstitutional municipal policy that encouraged and/or sanctioned the cover-up of members' of service misconduct.  Fifth, in <u>White-Ruiz v. City of New York</u>, 983 F. Supp. 365 (S.D.N.Y. 1997)) (Compl., Ex. A at ¶ 57(b)), the Court found that defendant City was liable based on an unwritten policy that sanctioned a practice of discouraging the reporting of corrupt acts by police officers and of retaliating against officers who reported misconduct.  <u>Id.</u> at 390-92.  However, since the underlying alleged misconduct in <u>White-Ruiz</u> occurred from February 1988 until April 1994 (<u>Id</u>. at 395), that case does not suggest that, in 2011, defendant City had a custom of discouraging police officers from reporting misconduct.  As such, that case cannot plausibly, or causally, support plaintiff's claim of municipal liability.  Based on all of the foregoing, defendants are entitled to summary judgment on plaintiff's municipal liability claim.

## PLAINTIFF CANNOT MAINTAIN STATE LAW CLAIMS

To the extent that the complaint raises state law claims, those claims should be dismissed because plaintiff failed to commence this action within the statute of limitations imposed by the New York General Municipal Law.  N.Y. GEN. MUN. LAW § 50-i(1)(c);  N.Y. GEN. MUN. LAW § 50-k(6).  The events giving rise to plaintiff's claims occurred on October 14, 2011 and plaintiff commenced the within action on October 9, 2014, almost three years later. Accordingly, since plaintiff did not commence this action within the statutory mandated time period, his state law claims against defendants must be dismissed.[5]

---

[5] Defendants further maintain that any state claims are without merit, but reserve argument on that point as they are plainly untimely, must be dismissed, and alternatively, the Court should decline pendant jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Pitchell v. Callan</u>, 13 F.3d 545, 549 (2d Cir. 1994)

## <u>CONCLUSION</u>

For the foregoing reasons, defendants City of New York, Police Officer Anthony

DiFrancesca, Police Officer Jerome Allen and Police Sergeant Brian Byrnes respectfully request

that the Court grant their motion for summary judgment in its entirety, together with costs, fees

and such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              May 13, 2016

                                        ZACHARY W. CARTER
                                          Corporation Counsel of the City of New York
                                        *Attorney for Defendants City of New York,*
                                        *DiFrancesca, Allen and Byrnes*
                                        New York City Law Department
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2373

                                        By: _____/s/_____
                                                Andrew J. Lucas; Joy T. Anakhu
                                                *Senior Counsels*
                                                Special Federal Litigation Division

TO: Jeffrey A. Rothman, Esq. (via ECF)
        *Attorney for Plaintiff*
        315 Broadway, Suite 200
        New York, New York 10007