UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ARIEL DOUGLAS,                                          )
                                                        )
                    Plaintiff,                        )
                                                        )
   -against-                                           )
                                                        )
THE CITY OF NEW YORK; POLICE OFFICER                    )    **14 Civ. 8124 (ALC)**
ANTHONY DIFRANCESCA, Shield No. 04200;                  )
POLICE OFFICER JEROME ALLEN, Shield No.                 )
27302; POLICE SERGEANT BRIAN BYRNES,                    )
Shield No. 969; JOHN DOES; and RICHARD                  )
ROES,                                                   )
                                                        )
                    Defendants.                       )
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

TABLE OF CONTENTS

Table of Authorities ...................................................................................................iii

INTRODUCTION …. .................................................................................................1

STATEMENT OF FACTS ………..............................................................................1

ARGUMENT ..............................................................................................................2

    I.     GENERAL STANDARDS FOR SUMMARY JUDGMENT,
          AND FOR PLAINTIFF'S EXCESSIVE FORCE AND
          FAILURE TO INTERVENE CLAIMS ………………………………....2

    II.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT
          WITH RESPECT TO THE ISSUES OF EXCESSIVE FORCE
          AND FAILURE TO INTERVENE THAT WOULD PRECLUDE
          THIS COURT FROM GRANTING SUMMARY JUDGMENT
          TO PLAINTIFF ON THESE CLAIMS………………….……………….6

CONCLUSION …..................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Brown v. Eli Lilly & Co.,* 2011 WL 3625105, (2d Cir. 2011) …………………..…………2

*Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) ……………………………………………….6

*Coleman v. City of Chicago, et al.*, 12 C 10061 (N.D.Ill.) (December 14, 2015) ……..3

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir. 2009) ……………..…..2

*Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712 (2d Cir. 2010) …………2

*Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982) …………………………………………….6

*Gersbacher v. City of N.Y.*, 2015, U.S. Dist. LEXIS 129994 (S.D.N.Y. 2015) …….5, 11

*Graham v. Connor*, 490 U.S. 386 (1989) …………………………………………………3

*Marcavage v. City of New York*, 2010 WL 3910355 (S.D.N.Y. 2010) …………….…..3

*Pesola v. City of New York, et al.*, 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. 2016) …..4

*Robison v. Via*, 821 F.2d 913 (2d Cir. 1987) ………………………………………...……4

*Scott v. Harris*, 550 U.S. 372 (2007)……………………………………………………….3

*Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2d Cir. 2010) ………………2

**INTRODUCTION**

Plaintiff respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment as to his claims for excessive force against Defendant Police Officer Anthony DiFrancesca[1], and as to his claims for failure to intervene against Defendant Police Sergeant Brian Byrnes and Defendant Police Officer Jerome Allen.

**STATEMENT OF FACTS**

On October 14, 2011, approximately 8 a.m., Plaintiff was arrested by Defendant Police Officer DiFrancesca (with the assistance of Defendant Police Sergeant Byrnes, and in the immediate presence of Defendant Police Officer Allen) in the vicinity of Maiden Lane and Water Street in lower Manhattan. The factual circumstances surrounding the arrest are deeply contested (and the video footage available to the parties concerning the pre-arrest occurrences is partial, and incomplete) and therefore not susceptible to summary adjudication. Certain facts, however, concerning the excessive force used upon Plaintiff by Officer DiFrancesca, and the failure to intervene to prevent this excessive use of force by Sergeant Byrnes and Officer Allen, cannot be contested, because they are captured on video footage (and still photographs) and because of the admissions made by Officer DiFrancesca at his deposition. Summary judgment in Plaintiff's favor as to these Defendants' liability on these claims is therefore appropriate.

Plaintiff respectfully refers the Court to his Local Rule 56.1 Statement (hereafter "Plaintiff's 56.1 Stat."), which sets forth the uncontested facts relevant to the instant motion. These facts are taken exclusively from Officer DiFrancesca's deposition testimony, and the

---

[1] Defendant DiFrancesca has since this incident been promoted to Detective. For the sake of simplicity, I refer to him as "Officer," his rank on the date of the incident.

1

video footage and photographs that have been exchanged in discovery in this action. Plaintiff also relies upon his medical records in support of the instant motion.

## ARGUMENT

### I. GENERAL STANDARDS FOR SUMMARY JUDGMENT, AND FOR PLAINTIFF'S EXCESSIVE FORCE AND FAILURE TO INTERVENE CLAIMS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'" Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2nd Cir. 2010)(quoting Roe v. City of Waterbury, 542 F.2d 31, 35 (2nd Cir. 2008)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2nd Cir. 2010). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2nd Cir. 2009). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts,'" Brown v. Eli Lilly & Co., 654 F.3d 347 (2d Cir. Aug 18, 2011) (quoting Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), and "must not rely on conclusory allegations or unsubstantiated

2

speculation.'" Id. (quoting Federal Deposit Ins. Corp., v. Great Am. Ins. Co., 607 F.3d 288, 292 (2nd Cir. 2010).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Marcavage v. City of New York, 2010 WL 3910355, *4 (S.D.N.Y. Sept 29, 2010) (Sullivan, J.) (citing Fed. R. Civ. P. 56(c)(2) and Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Summary judgment, in certain circumstances, can be granted based upon consideration of video recordings. *See*, Scott v. Harris, 550 U.S. 372 (2007). In civil rights cases - including those making claims for excessive force and the failure to intervene to prevent the use of excessive force - brought against members of law enforcement pursuant to 42 U.S.C. § 1983, it is usually the Defendant law enforcement officers who seek to invoke Scott[2]. It is equally appropriate, however, in certain circumstances, for summary judgment to be granted to a Plaintiff in such cases based upon video evidence. *See*, e.g., Memorandum Opinion and Order in Coleman v. City of Chicago, et al., 12 C 10061 (N.D.Ill.) (December 14, 2015), annexed as Exhibit 7 to the Rothman Decl. (holding Defendants liable on Plaintiff's claims for excessive force and failure to intervene based upon video footage).

The reasonableness of any seizure, including the use of force, is determined by "'careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Serious

3

or significant physical injury (although Plaintiff in fact sustained a significant injury from Officer DiFrancesca's conduct herein) is not required to establish a claim for excessive force. *See*, Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) ("While Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim. If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). *See also*, Pesola v. City of New York, et al., 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. 2016) (Castel, J.):

> Courts in this Circuit regularly hold that a plaintiff must have sustained some injury to maintain a claim of excessive force. See, e.g., Acosta v. City of New York, 11 cv 856 (KBF), 2012 U.S. Dist. LEXIS 60460, 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012); Wims v. New York City Police Dep't, 10 cv 6128 (PKC), 2011 U.S. Dist. LEXIS 78641, 2011 WL 2946369, at *4-5 (S.D.N.Y. July 20, 2011). That injury, however, need not be severe. See Lindsey v. Butler, 43 F. Supp. 3d 317, 328 (S.D.N.Y. 2014) (denying dismissal of excessive force claim where Plaintiff alleged he was "pushed to the ground without provocation with enough pressure to cause a mild concussion, dizziness, and lower back pain"); Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (denying summary dismissal of excessive force claim where plaintiff "testified that she suffered bruises lasting a 'couple weeks'"). Under certain circumstances, even allegations that officers gratuitously inflicted pain may be sufficient to sustain an excessive force claim. Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 124 (2d Cir. 2004) (reversing district court's grant of summary judgment dismissing excessive force claim where "a reasonable jury could also find that the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstances")

Pesola at *21-22.

---

[2] Scott granted summary judgment to the Defendant police deputy in that case based upon video footage of a police vehicular chase.

There are several specific factors, and any number of un-delineated factors, that Courts consider in analyzing an excessive force claim. *See*, e.g., Gersbacher v. City of N.Y., 2015 U.S. Dist. LEXIS 129994, at *22-24 (S.D.N.Y. Sep. 25, 2015):

> In determining whether the force used in a given arrest is reasonable, courts pay careful attention to the facts and circumstances of each case, including (1) the severity of the crime at issue, (2) whether the arrestee poses an immediate threat to the safety of the officers or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (citing Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).
>
> Gersbacher pleads facts sufficient to sustain his excessive force claim. The three crimes discussed above, Obstruction of Governmental Administration, Disorderly Conduct, and Resisting Arrest[3], are not severe. See, e.g., Brown v. City of New York, 798 F.3d 94, 2015 U.S. App. LEXIS 14517, 2015 WL 4924395, at *6 (2d Cir. Aug, 19, 2015) (applying the Graham factors and describing the severity of a disorderly conduct charge as "unquestionably slight"). Nothing in the complaint suggests that Gersbacher posed a safety threat to the officers, and although there are some indications that Gersbacher may have attempted to leave the immediate area—the complaint describes Gersbacher moving away from the officers after the initial contact—nothing indicates that he was actively resisting arrest or that it would have been at all reasonable for five officers to pin Gersbacher down with their full body weight and punch him.

When a police officer commits an act of excessive force in the presence of other members of the police force, they have a duty (at all ranks, but especially those of a supervisory

---

[3] Plaintiff, also, was charged with Resisting Arrest (a Class A Misdemeanor), in addition to Criminal Mischief in the Fourth Degree (also a Class A Misdemeanor). *See*, 10/24/11 Criminal Court Complaint signed by Defendant DiFrancesca, annexed as Exhibit 8 to the Rothman Decl. Plaintiff was originally charged with Criminal Mischief in the Third Degree (a Class E Felony), based upon the suspected value of the damage to the police scooter, but that charge was then downgraded to the charge of Criminal Mischief in the Fourth Degree. Plaintiff notes that although the two Class A Misdemeanors are not severe for purposes of evaluating an excessive force claim, they are punishable by up to a year in jail, and being falsely charged with them is a very serious matter indeed.

rank) to intervene to stop the use of excessive force. *See*, e.g., Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) (cited to in Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir. 1982)):

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

Under these standards, Plaintiff submits that he is entitled to summary judgment on his claims for excessive force against Defendant Police Officer Anthony DiFrancesca, and as to his claims for failure to intervene against Defendant Police Sergeant Brian Byrnes and Defendant Police Officer Jerome Allen.

**II.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO THE ISSUES OF EXCESSIVE FORCE AND FAILURE TO INTERVENE THAT WOULD PRECLUDE THIS COURT FROM GRANTING SUMMARY JUDGMENT TO PLAINTIFF ON THESE CLAIMS.**

Officer DiFrancesca behaved entirely unreasonably when he violently dragged Plaintiff in the street, and then wantonly mashed Plaintiff's face into the pavement with his nightstick. In evaluating the unreasonableness of his conduct, the Court should also consider the manifest

unreasonableness of his attitudes and conclusions during the events that preceded the use of force[4].

Although Officer DiFrancesca claims to have known nothing at all about Plaintiff when he first encountered him (Plaintiff's 56.1 Stat. at ¶12), he made various assumptions about what he took to be Plaintiff's anti-police animus. He testified as follows in that regard[5] :

> Q Do you have any theory as to what you think he was trying to accomplish by creating this spectacular scene you thought he was trying to create?
> …
> A The, you know, usual story of making the police look bad.
> Q What do you mean by the usual story?
> …
> A You know, that's the common narrative.
> Q Among who?
> A Among the press.
> Q At that point did you think he was a member of the press?
> A No.
> Q Did you think he was at that point a legal observer?
> A No.
> Q Did you think he was just a regular civilian?
> A I had no idea who he was.
> Q Then why did you think he was trying to create part of the common press narrative that was anti-police?
> …
> A By his own actions.
> Q Did you subsequently come to learn that he was a legal observer?
> A After the fact, yes.
> Q When?
> A I believe they told me at the precinct.
> Q Did that cause you in any way to reconsider whether he was trying to create an anti-police narrative?
> A No.

---

[4] Significant disputes of fact prevent summary judgment from being appropriate on Plaintiff's false arrest and other claims. However, Officer DiFrancesca's deposition testimony concerning the events preceding the arrest evinced attitudes and conclusions that were manifestly unreasonable, and the Court should consider them in light of the totality of the circumstances bearing upon evaluating the reasonableness or unreasonableness of his use of force.

[5] Opposing counsel's objections have been omitted.

> Q Even though all of your other interactions with legal observers have been cooperative and cordial?
> A Yes.

Plaintiff's 56.1 Stat. at ¶17.  See also, DiFrancesca Tr. 110:21-112:16 , annexed as Ex. 1 to the Rothman Decl.

      Officer DiFrancesca's interactions with Plaintiff all occurred very quickly (s*ee*, Plaintiff's 56.1 Stat. at ¶44, stating that he estimated that the whole encounter with Plaintiff took approximately a minute), yet he made all manner of other unreasonable assumptions as well: about Plaintiff falling on purpose (Plaintiff's 56.1 Stat. at ¶¶10-11), that Plaintiff's screams were not genuine (Plaintiff's 56.1 Stat. at ¶17), and that Plaintiff purposely placed his rear foot under the scooter's back tire in order to make it appear that his foot was pinned by the back tire. (Plaintiff's 56.1 Stat. at ¶19).  Officer DiFrancesca was so confident, based on these quick interactions that he and his motor scooter had with Plaintiff, that Plaintiff was a nefarious faker that he testified that he never even considered the possibility that Plaintiff might have been having an emotionally difficult experience due to fear or pain, or considered that Plaintiff might have been just freaking out because he had gotten knocked down unexpectedly or lost his balance unexpectedly.  Plaintiff's 56.1 Stat. at ¶20.

      Officer DiFrancesca also tendentiously misrepresented what was happening at the scene of the incident.  He testified that he got off of his scooter, and went at first to engage in crowd control, because he felt he "had to tend to the frenzy that was caused of the people trying to get closer and closer."  Plaintiff's 56.1 Stat. at ¶21.  But a review of the video footage annexed to and referenced in ¶3 to the Rothman Decl. shows that there was no "frenzy" by the crowd.  There were certainly many civilians around - both demonstrators and observers - and many of them

were seeking to see what was going on. But there is on the video no indication of any difficulty that the many, many police present at the immediate scene had in having the crowd move back, or in creating space for themselves. *See*, e.g., video clip 01807 at 1:30 et seq. (annexed as part of Ex. 3 to the Rothman Decl) (showing that when Officer DiFrancesca got off his scooter - with Plaintiff underneath it - to engage in his crowd control endeavors that the crowd was standing around peaceably watching, filming, and photographing, and none of the civilians present was at that point remotely frenzied; the many members of the NYPD who were present at the scene had not a whit of difficulty at that juncture in having the people present move back). When Officer DiFrancesca got off of his scooter - with Plaintiff underneath it - he also testified that he did not give any thought at all to potentially trying to assist Plaintiff, and did not give any thought at all to the possibility that Plaintiff might have been in need of assistance when he was underneath the scooter. Plaintiff's 56.1 Stat. at ¶23.

Officer DiFrancesca also testified that, after Plaintiff kicked the scooter while he was underneath it, he claims to have seen Plaintiff with Plaintiff's foot still up in the air, and that at that point he thought that Plaintiff "was going to be a violent person. He was just violent." Plaintiff's 56.1 Stat. at ¶27. He also testified that at that point he concluded - entirely unreasonably - that Plaintiff was poised to strike a member of the NYPD who had a helmet on. Plaintiff's 56.1 Stat. at ¶28. But Officer DiFrancesca's testimony about Plaintiff's foot being poised to strike a helmeted member of the NYPD is patently untrue. As can be seen clearly in the video footage, after Plaintiff kicks the scooter to get it off of him, he scooches his body backwards and away from the scooter, and is immediately picked up and violently dragged by Officer DiFrancesca and his colleagues to the location where Officer DiFrancesca proceeds to

9

violently mash his face into the pavement with his nightstick. *See*, video clip 01807 at 1:35 et seq., annexed as part of Exhibit 3 to Rothman Decl. Plaintiff's 56.1 Stat. at ¶29. The video footage belies entirely Officer DiFrancesca's claim that Plaintiff's foot was poised to strike anyone when he went over to Plaintiff and violently dragged him along the pavement, and then proceeded to violently mash his face into the pavement with his nightstick. Further - beyond the fact that the video conclusively shows that Plaintiff never had his foot poised in anything like the way that he claims - Officer DiFrancesca's conclusion that Plaintiff intended to kick a police officer is entirely unreasonably based upon the fact that he admits that he never saw Plaintiff move his foot in a kicking motion toward any Officer (Plaintiff's 56.1 Stat. at ¶30), and based upon his admission that although Plaintiff - during the period of time when he was on the ground - if were he so inclined probably could have kicked Officer DiFrancesca, in fact never kicked Officer DiFrancesca (Plaintiff's 56.1 Stat. at ¶31).

It was in the context of all of these unreasonable assumptions and conclusions (all of which are his own admissions, and therefore not contested issues of fact), that Officer DiFrancesca then - unreasonably, excessively, and with unnecessary violence - lifted Plaintiff up, dragged Plaintiff along the pavement[6], deposited Plaintiff roughly on the ground, and then proceeded to mash Plaintiff's face into the pavement with his nightstick.

Officer DiFrancesca is, and was on the date of the incident, a weightlifter, and one can see from the videos and photos of him that he is obviously very physically powerful, especially

---

[6] Other members of the NYPD are seen on the video footage (see Rothman Decl at ¶ 3, and Ex. 3 thereto) assisting Officer DiFrancesca to drag Plaintiff, though it is clear from the footage that Officer DiFrancesca initiated this and was the primary muscle behind it, having grabbed Plaintiff by the back of Plaintiff's shirt and then lifting and pulling Plaintiff.

in his arms. Plaintiff's 56.1 Stat. at ¶¶4-7. He also spent four years in the United States Marine Corps (Plaintiff's 56.1 Stat. at ¶8) and has therefore had - in conjunction with his police training and experience - certainly no dearth of training and experience with physical combat. With all of the other members of the NYPD who were immediately around him[7], there was no justifiable reason at all to mash Plaintiff's face into the pavement with his nightstick, and no reasonable jury could conclude that this was a reasonable act in the circumstances he faced. Plaintiff's 56.1 Stat. at ¶¶32-39, and 42. The crimes Plaintiff was suspected of committing (and suspected of committing based upon a number of unreasonable assumptions and conclusions, as discussed *supra*) were not severe, and Plaintiff did not pose an immediate threat to the safety of the officers or others (especially in light of the large number of other members of the NYPD immediately present, and the size and strength of both Officer DiFrancesca and Sergeant Byrnes, both of whom were quickly on top of Plaintiff and thoroughly in control of his movements[8]. *See*, Gersbacher, *supra.*

---

[7] Defendant Sergeant Byrnes - another beefy, powerful guy, as can been seen in the videos and photos - in fact came over immediately to assist him. Plaintiff's 56.1 Stat. at ¶40.

[8] Although Officer DiFrancesca has testified that Plaintiff was clasping his hands together in front of him to attempt to prevent his arms from being brought behind his back, and there is a fact dispute about that, Plaintiff submits that this is not material to the question of whether mashing his face into the pavement with a nightstick was or was not reasonable under the Fourth Amendment in these circumstances. It is clear from the video footage that Plaintiff was in Officer DiFrancesca's and Sergeant Byrnes' complete control. Assuming - *arguendo* only, of course, taking the facts in the light most favorable to these Defendants on this motion - that Plaintiff was trying to prevent his arms from being brought behind his back, that cannot justify wantonly mashing his face into the pavement with a nightstick. There were plenty of officers around and it was entirely feasible to get his arms quickly behind his back without resorting to this type of violence.

As a result of Officer DiFrancesca's violent conduct, Plaintiff sustained a wound to his face that caused a copious flow of his blood out of his body, and that required stitches at the emergency room to close.  Plaintiff's 56.1 Stat. at ¶¶45-46, 48, and 50.

Officer DiFrancesca also made a further unreasonable assumption concerning Plaintiff's condition following the brutal assault that Officer DiFrancesca had just meted out upon him. Officer DiFrancesca testified that he thought that Plaintiff had purposely thrown himself at a police Chief, smearing the Chief's shirt with blood from his face, as he was led rear-handcuffed to the prisoner wagon, and Officer DiFrancesca did not think that the way in which he had held Plaintiff's neck and head down with his nightstick, and then sat on Plaintiff's back, might have potentially contributed to Plaintiff's falling or collapsing into the Chief on the way to the prisoner van, or otherwise contributed to Plaintiff's difficulty in walking to the prisoner van. Plaintiff's 56.1 Stat. at ¶¶45-47

Sergeant Byrnes was present in the immediate vicinity when Officer DiFrancesca was mashing Plaintiff's face into the pavement with his nightstick, and participated in the handcuffing process, and did nothing to prevent Officer DiFrancesca from mashing Plaintiff's face into the ground with his nightstick.  Plaintiff's 56.1 Stat. at ¶¶40 and 43.

Officer Allen was also present in the immediate vicinity when Officer DiFrancesca was mashing Plaintiff's face into the pavement with his nightstick, and did nothing to prevent Officer DiFrancesca from mashing Plaintiff's face into the ground with his nightstick.  Plaintiff's 56.1 Stat. at ¶41.

## CONCLUSION

While a jury determination will be necessary concerning liability as to the other issues in this case, as to which there are significant issues of fact, no reasonable juror could view the evidence in this case - even viewed in the light most favorable to Defendants - and determine that the force used upon Plaintiff by Officer DiFrancesca, or the failure to intervene to prevent it by Sergeant Byrnes and Officer Allen, was reasonable under the Fourth Amendment.  The jury at the trial of this action should be instructed that as to Plaintiff's claims for excessive force, and failure to intervene to prevent the use of excessive force, against these Defendants, liability has already been established, and their only function is to determine an appropriate amount of damages.

For all the reasons set forth above, Plaintiff respectfully requests that this Honorable Court grant his motion for partial summary judgment as to his claims for excessive force against Defendant Police Officer Anthony DiFrancesca, and as to his claims for failure to intervene against Defendant Police Sergeant Brian Byrnes and Defendant Police Officer Jerome Allen.

Dated:      New York, New York
            May 13, 2016

Respectfully submitted,

_____/S/_____
JEFFREY A. ROTHMAN
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980

*Attorney for the Plaintiff*

13