UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ARIEL DOUGLAS,                                          )
                                                        )
                                  Plaintiff,            )
                                                        )
             -against-                                  )
                                                        )
THE CITY OF NEW YORK; POLICE OFFICER                    )        **14 Civ. 8124 (ALC) (AJP)**
ANTHONY DIFRANCESCA, Shield No. 04200;                  )
POLICE OFFICER JEROME ALLEN, Shield No.                 )
27302; POLICE SERGEANT BRIAN BYRNES,                    )
Shield No. 969; JOHN DOES; and RICHARD                  )
ROES,                                                   )
                                                        )
                                  Defendants.           )
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................iii

INTRODUCTION …. ......................................................................................................1

STATEMENT OF FACTS ……….................................................................................1

ARGUMENT ...................................................................................................................1

    I.       GENERAL STANDARDS FOR SUMMARY JUDGMENT ……………1

    II.      CONCERNING THE PLAINTIFFS' FALSE ARREST CLAIMS …..….3

               Concerning Criminal Mischief under
               NY Penal Law § 145.00(3) …………...............................................3

               Concerning Obstruction of Governmental Administration,
               NY Penal Law § 195.05 ………...……………..…………………5

               Concerning Disorderly Conduct,
               NY Penal Law § 240.20(5) ...…....……………..…………………7

               Concerning Vehicle and Traffic Law §§ 1102 and 1156(a),
               and the Rules of the City of New York § 4 04(c)(2) ...…......……….8

    III.     CONCERNING THE PLAINTIFF'S CLAIMS FOR
             MALICIOUS PROSECUTION ………………………………...…….10

    IV.     CONCERNING THE PLAINTIFF'S CLAIMS
             FOR ABUSE OF PROCESS ……….…………………………...……….13

    V.      CONCERNING THE PLAINTIFF'S CLAIMS FOR
             EXCESSIVE FORCE ………..…………….…..…………….....……….14

    VI.     CONCERNING THE PLAINTIFF'S CLAIMS FOR
             FIRST AMENDMENT RETALIATION ………..……………..……16

    VII.    CONCERNING THE PLAINTIFF'S DUE PROCESS CLAIMS
             FOR FABRICATION OF EVIDENCE ………...……..………..……17

    VIII.   CONCERNING THE PLAINTIFF'S
             FAILURE TO INTERVENE CLAIMS …………………..………..……18

IX.    DEFENDANTS ARE NOT ELIGIBLE
FOR QUALIFIED IMMUNITY …..………………………...…...…….19

X.    CONCERNING MUNICIPAL LIABILITY ……..…………………..22

CONCLUSION …............................................................................................................24

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Barbosa v. Dean*, 55 A.D.2d 573 (1st Dept. 1976) …………………………...…………9

*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) …………………………13

*Brown v. Eli Lilly & Co.,* 2011 WL 3625105, (2nd Cir. 2011) ……………….……….2

*City of Houston v. Hill*, 482 U.S. 451 (1987) ……...……………………………………17

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994) …………………………………………13

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2nd Cir. 2009) ……………….….2

*Davis v. City of New York*, 373 F.Supp.2d 322 (S.D.N.Y. 2005) ………………………20

*Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712 (2nd Cir. 2010) …....……1

*Greenfield v. City of N.Y.,*
2000 U.S. Dist. LEXIS 1164 (S.D.N.Y. Feb. 3, 2000) …………………………………23

*Juan Gomez v. City of New York, et al.,*
14 Civ. 2621 (ILG) (CLP) (E.D.N.Y.) (May 5, 2016) …………………………………18

*Hague v. CIO*, 307 U.S. 496 (1939) …………………………………………………22

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) …………………………………………21

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) …………………………………..12

*Lambert v. Williams*, 223 F.3d 257 (4th Cir. 2000) …………………………………13

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996) …………………………..13

*Marcavage v. City of New York*, 2010 WL 3910355 (S.D.N.Y. 2010) …………………..2

*People v Dipoumbi*, 23 Misc. 3d 1127[A] (Crim. Ct., Bronx County 2009) …………..6

*People v. Jones*, 9 N.Y.3d 259 (2007) …………………………………………………..8

*People v. Terborg*, 35 A.D.3d 1169, 825 N.Y.S.2d 897 (App. Div. 4th Dept.) …….…..4

*People v. Simon*, 145 Misc. 2d 518 (Crim. Ct., Bronx County 1989) ……………..………..6

*Phelps v. City of New York*,
2006 U.S. Dist. LEXIS 42926 (S.D.N.Y. 2006) ………………………………………..13

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ….………………………17

*Shepherd v. Powers*, 55 F.Supp.3d 508 (S.D.N.Y. 2014) ………………………………23

*Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013) ………………………………………..10

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ………...……………………………..13

*Tellier v. Fields,* 280 F.3d 69 (2d Cir.2000) …………………………………………….20

*Tchatat v. City of N.Y.*,
2015 U.S. Dist. LEXIS 115093 (S.D.N.Y. Aug. 28, 2015) …………...…………….10, 19

*Wilson v. Layne*, 526 U.S. 603 (1999) …………………………………………………..20

*Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2nd Cir. 2010) ………………1

**INTRODUCTION**

Plaintiff respectfully submits this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, and in further support of Plaintiff's Motion for Partial Summary Judgment.

**STATEMENT OF FACTS**

Plaintiff respectfully refers the Court to the Plaintiff's May 13, 2016 Rule 56.1 Statement in support of Plantiff's motion for partial summary judgment, and to the Plaintiff's June 10, 2016 Response To Defendants' Statement Pursuant To Local Rule 56.1, which set forth the facts in detail. Plaintiff also respectfully refers the Court to the Plaintiff's May 13, 2016 Memorandum of Law, and to the May 13, 2016 Rothman Declaration (and Exhibits 1-8 thereto), and the June 10, 2016 Further Rothman Declaration (and Exhibits 9-15 thereto).  Particular facts are discussed in the context of Plaintiff's Argument, below.

**ARGUMENT**

**I.      GENERAL STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law.'"  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2nd Cir. 2010) (quoting Roe v. City of Waterbury, 542 F.2d 31, 35 (2nd Cir. 2008)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2nd Cir. 2010).

1

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2nd Cir. 2009).  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts,'" Brown v. Eli Lilly & Co., 654 F.3d 347 (2d Cir. Aug 18, 2011) (quoting Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), and "must not rely on conclusory allegations or unsubstantiated speculation.'" Id. (quoting Federal Deposit Ins. Corp., v. Great Am. Ins. Co., 607 F.3d 288, 292 (2nd Cir. 2010).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Marcavage v. City of New York, 2010 WL 3910355, *4 (S.D.N.Y. Sept 29, 2010) (Sullivan, J.) (citing Fed. R. Civ. P. 56(c)(2) and Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

Under these standards, Plaintiff submits that he is entitled to summary judgment on his excessive force claims against Defendant Officer DiFrancesca, and on his claims for failure to intervene against Defendant Sergeant Brian Byrnes and Defendant Officer Jerome Allen, and that the Defendants' motion for summary judgment should be denied in its entirety.

## II.   CONCERNING THE PLAINTIFF'S FALSE ARREST CLAIMS.

### Concerning Criminal Mischief under NY Penal Law § 145.00(3)

There was not probable cause to arrest Plaintiff on October 14, 2011 for Criminal Mischief in the fourth degree under NY Penal Law § 145.00(3)[1].  There are stark disputes of fact in this case as to whether Plaintiff was struck by Officer DiFrancesca's scooter, causing him to fall down, and whether Officer DiFrancesca's scooter ran over Plaintiff's foot / leg, and whether Plaintiff kicked the scooter because it had been left on top of him, trapping his right foot / leg, and Plaintiff kicked it solely to get it off of him, as no member of the NYPD was seeking to assist him in any way.  *See*, Plaintiff's 56.1 Counterstatement at ¶¶ 24, 26-31, 75-76.

Plaintiff was originally charged with Felony Criminal Mischief under NY Penal Law § 145.05, which was then downgraded on February 2, 2012 to a charge of Misdemeanor Criminal Mischief under NY Penal Law § 145.00.  Officer Allen has admitted that he had no reliable basis to conclude that the damage to the scooter was in an amount more than $250, and no reliable evidence of that has been otherwise adduced by Defendants.  *See*, Plaintiff's 56.1 Counterstatement at ¶¶ 33 and 62.  NY Penal Law § 145.00(3), which requires damage in an amount more than $250 is thus inapplicable, as Defendants have not set forth any reliable basis to conclude that the damage caused to the scooter was in an amount more than $250[2].  This *ab*

---

[1] With regard to Criminal Mischief, Defendants only seek to rely upon NY Penal Law § 145.00(3), and Plaintiff therefore only addresses this subsection.

[2] Further, as noted in Plaintiff's 56.1 counterstatement at ¶ 33, there was never any allegation against Plaintiff on any of his arrest paperwork, or in the course of the criminal proceedings against him that lasted 2 ¼ years, that any damage to the police van was in an amount exceeding $250, and there is no evidence adduced anywhere by Defendants to support that proposition.

*initio* removes the issue of probable cause to arrest for NY Penal Law § 145.00(3) from consideration in its entirety for this reason alone, without need to analyze the issues of intent to damage property, or whether Plaintiff had a right to do so or any reasonable ground to believe that he had such right, both of which also invalidate Defendants assertion of probable cause to arrest.

Consideration of the intent requirements in this statute only serves to further invalidate Defendants assertion of probable cause under NY Penal Law § 145.00(3), if the facts are viewed in the light most favorable to Plaintiff, as they must be on Defendants' motion.  Based on the plain wording of the statute, for there to have been probable cause to arrest under NY Penal Law § 145.00(3) a reasonable officer must have been able to conclude that Plaintiff had done intentional damage to the property of another, and did so under circumstances where he had no right to do such damage nor any reasonable ground to believe that he had such right.  But the facts viewed in the light most favorable to the Plaintiff on the instant motion are such that Plaintiff had a reasonable ground to believe that he could kick the scooter to get it off of him, since Officer DiFrancesca had struck him with the scooter, causing him to fall down, run over his foot / leg, and then left the scooter on top of him, trapping his foot / leg, and none of the members of the NYPD standing around were doing anything to help him.  Further, if the facts are viewed in the light most favorable to Plaintiff a reasonable officer viewing this scene would not conclude that Plaintiff had the specific intent[3] to damage the scooter, but rather would

---

[3] *See*, e.g., <u>People v. Terborg</u>, 2006 NY Slip Op 9750, ¶ 1, 35 A.D.3d 1169, 1170, 825 N.Y.S.2d 897, 898 (App. Div. 4th Dept.) ("Although defendant may have acted recklessly with respect to the result, *i.e.*, the damage to the victim's car, the evidence weighs heavily in favor of a finding that defendant did not specifically intend to damage the car….") (internal citations omitted).

conclude that Plaintiff had just suffered an assault by Officer DiFrancesca with his scooter, and that he was freaking out and screaming with agitation and fear, and just trying to get the scooter off of him.

## Concerning Obstruction of Governmental Administration, NY Penal Law § 195.05

For similar reasons, the Obstruction of Governmental Administration statute, NY Penal Law § 195.05 also cannot be used as a justification for Plaintiff's arrest in this case.  Plaintiff was never given any orders to "back up," and a non-party witness on the scene similarly never heard such orders given[4].  The crowd also was not "surging," and Officer DiFrancesca has tendentiously misrepresented what was happening at the scene of the incident.  Plaintiff also did not testify that he was edging forward, only that he was looking to get the arrestee's biographical information so he could pass it along to the National Lawyer's Guild.  Plaintiff also has set forth evidence indicating that Officer DiFrancesca was trying to, and did, behave aggressively with his scooter (especially when he assaulted Plaintiff with it), and that he was not trying to responsibly establish any perimeter for the purpose of ensuring anyone's safety.  Officer DiFrancesca's aggression and violence belies such.  *See*, Plaintiff's 56.1 Counterstatement at ¶ 20-21, 24-25. *See also*, Plaintiff's 5/13/16 56.1 Statement.

There is no indication at all that anything Plaintiff did prior to being assaulted by Officer DiFrancesca and his scooter interfered with or obstructed the arrest of the other individual (or

---

[4] Further, if such an order were given arbitrarily or to prevent a Legal Observer (or anyone else for that matter trying to observe police activity) from observing police activity, then it is an illegal order, violative of the First Amendment, if the individual is not interfering with police activities (and no evidence has been adduced by Defendants that Plaintiff was interfering with police activities prior to Officer DiFrancesca assaulting him with his scooter).

anything else), in any way.  *See*, <u>People v. Simon</u>, 145 Misc. 2d 518, 522 (Crim. Ct., Bronx

County 1989):

> The court finds that the statute contemplates direct physical force or interference.
> While the infliction of physical injury is not required, it is essential that the
> alleged conduct physically interfere with the officer's official function. The
> requirement that the conduct be one of violence or physical interference or be
> independently unlawful was written into the statute to prevent this section from
> being an overly broad catchall for any behavior that might tangentially interfere
> with a government function.

Penal Law § 195.05 also has an important and stringent scienter requirement (which

requires intent, and not mere recklessness).  *See*, <u>People v Dipoumbi</u>, 23 Misc. 3d 1127[A]

(Crim. Ct., Bronx County 2009):

> The defendant contends that the accusatory instrument fails to establish
> reasonable cause to believe that he prevented or attempted to prevent the deponent
> police officer from performing an official function by means of intimidation,
> physical force or interference. This Court agrees.
>
> Presumably, the official function that the defendant allegedly prevented or tried to
> prevent the deponent police officer from performing was issuing a traffic
> summons to him for failing to obey a stop sign. The accusatory instrument does
> not allege that the officer was prevented from executing that task. Even if the
> officer did not issue the summons after his arm was struck by the taxicab's door
> when it was opened by the defendant a causal relationship between that impact
> and an unissued summons is not made out. There is no factual allegation that the
> officer was rendered physically unable to issue the summons after his arm was
> struck. Equally missing from the complaint is any factual basis from which to
> infer that the defendant opened the door and struck the officer for the purpose of
> preventing him from issuing the summons. Even if the defendant's alleged
> conduct could be viewed as negligent or reckless given the proximity of the
> officer to the taxicab, the statute requires that the defendant's act to have been
> purposeful. "One cannot attempt to commit an act which one does not intend to
> commit."  <u>People v. Terry</u>, 104 AD2d 572, 479 N.Y.S.2d 278 (2d Dept 1984).

If the facts are viewed in the light most favorable to the Plaintiff, a reasonable officer

would have clearly gleaned that Plaintiff in his neon lime green Legal Observer hat (*See*,

Plaintiff's 56.1 Counterstatement at ¶¶ 9 and 85; s*ee also*, ¶ 9 to Plaintiff's 5/13/16 56.1 Statement) was simply trying to observe the arrest of the other individual, and to obtain his pedigree information to report to the National Lawyer's Guild, and that he was not trying to, and did not, interfere with nor obstruct anything the police were trying to do.  There is no possible application of the Obstruction of Governmental Administration statute on the Plaintiff's facts.

**Concerning Disorderly Conduct, NY Penal Law § 240.20(5)**[5]

The Disorderly Conduct statute also contains an important scienter requirement.  With regard to all of its various subsections, in order to violate the statute, one must commit the requisite offensive conduct "with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof …."  At this level alone, as discussed *supra*, Defendants' motion fails.  The facts viewed in the light most favorable to Plaintiff plainly supports the inference that Plaintiff was not intentionally causing, or recklessly creating a risk of, public inconvenience, annoyance, or alarm.  The inference to be drawn on Plaintiff's facts is precisely the opposite: that a National Lawyer's Guild Legal Observer was simply trying to do his job, and observe the arrest of another individual, and obtain his pedigree information to report back to the NLG.  The inferences to be drawn from Plaintiff's interactions with Officer DiFrancesca indicate that Officer DiFrancesca was attempting to (and did) interfere with Plaintiff's ability to conduct his Legal Observer activities, and was attempting to (and did) assault, falsely arrest and maliciously prosecute Plaintiff, not that Plaintiff was intentionally causing, or recklessly creating a risk of, public inconvenience, annoyance, or alarm.

_____

[5] With regard to Disorderly Conduct, Defendants only seek to rely upon NY Penal Law § 240.20(5), and Plaintiff therefore only addresses this subsection.

7

The disorderly conduct statute also has an important substantive element underlying subsection 5, which requires, in addition to having the necessary mens rea, causing an <u>actual</u> (not potential) obstruction of vehicular or pedestrian traffic, and requires the obstruction to be more than merely momentary or inconvenient.  *See*, <u>People v. Jones</u>, 9 N.Y.3d 259, 262-263 (2007):

> To meet the jurisdictional requisite to prosecute defendant for disorderly conduct under Penal Law § 240.20 (5), the People were obliged to set forth a prima facie case that defendant "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . obstruct[ed] vehicular or pedestrian traffic."

> The allegations in the information do not meet this burden. Nothing in the information indicates how defendant, when he stood in the middle of a sidewalk at 2:01 A.M., had the intent to or recklessly created a risk of causing "public inconvenience, annoyance or alarm." The conduct sought to be deterred under the statute is "considerably more serious than the apparently innocent" conduct of defendant here (<u>People v Carcel,</u> 3 NY2d 327, 331, 144 NE2d 81, 165 NYS2d 113 [1957]). Something more than a mere inconvenience of pedestrians is required to support the charge (<u>id.</u> at 332). Otherwise, any person who happens to stop on a sidewalk--whether to greet another, to seek directions or simply to regain one's bearings--would be subject to prosecution under this statute (see <u>People v Nixon,</u> 248 NY 182, 185, 161 NE 463 [1928] [Those congregating on the street display "atrociously bad manners" by "discommod(ing) some other persons" but such conduct alone does not necessarily give rise to disorderly conduct]).

The roadway on Maiden Lane had been closed by the police to all non-police vehicular traffic, but not to pedestrians (Plaintiff's 56.1 Counterstatement at ¶ 20), and there is no evidence at all adduced by Defendants that Plaintiff caused any interference at all to any pedestrian or vehicular traffic.

## <u>Concerning Vehicle and Traffic Law §§ 1102 and 1156(a), and the Rules of the City of New York § 4-04(c)(2).</u>

Defendants, in the same single sentence on page 5 of their brief in which they address disorderly conduct, also argue that there was probable cause to arrest Plaintiff based upon

purported violations of the Vehicle and Traffic Law (VTL) and the Rules of the City of New York (RCNY).  These VTL / RCNY sections are inapplicable to the circumstances of Plaintiff's arrest because, *inter alia*, (1) the police had closed the roadway on Maiden Lane to all non-police vehicular traffic, and were allowing people to walk in the roadway when Officer DiFrancesca assaulted Plaintiff with his scooter (*See*, Plaintiff's 56.1 Counterstatement at ¶ 20); (2) Plaintiff had not received any orders, and thus did not disobey any orders (*See*, Plaintiff's 56.1 Counterstatement at ¶¶ 20, 25); (3) Defendants have not adduced evidence that Officer DiFrancesca or other members of the NYPD were directing traffic when Officer DiFrancesca assaulted Plaintiff with his scooter; (4) Plaintiff was not strolling along in the roadway rather than on an available sidewalk[6] (he was a Legal Observer attempting to observe the arrest of another individual, and obtain his pedigree information for the National Lawyers' Guild, and stepped into the roadway - which had been closed by the police to vehicular traffic - for that purpose); and (5) Plaintiff was not a pedestrian crossing the roadway at an intersection and ignoring the cross-walk (he was visibly a Legal Observer wearing a lime green neon hat denoting such, who was simply attempting to observe the arrest of another individual, and obtain his pedigree information for the National Lawyers' Guild).

None of these VTL / RCNY sections could possibly serve to justify the interference with Plaintiff's First Amendment-protected activity, and arrest of Plaintiff that occurred in this case. Defendants are truly grasping at straws in their attempt to justify Mr. Douglas' unlawful arrest.

---

[6] Defendants also do not mention that Vehicle and Traffic Law § 1156(a) is not even effective in the City of New York.  *See*, Barbosa v. Dean, 55 A.D.2d 573 (1st Dept. 1976) ("We note that subdivision (a) of section 1156 of the Vehicle and Traffic Law relied upon by defendant Corbett is not effective in the City of New York (New York City Traffic Regulations, § 190)"), *application for leave to appeal denied*, 41 N.Y.2d 802 (1977).

On the facts of this case - with all inferences drawn in the light most favorable to Plaintiff, as they must be on Defendants' motion - his arrest plainly lacked probable cause, and Defendants' motion must be denied.

### III.   CONCERNING THE PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION

Defendants' arguments that they did not initiate a prosecution against Plaintiff are utterly meritless.  *See*, Swartz v. Insogna, 704 F.3d 105, 108 (2d Cir. 2013) ("Insogna subsequently swore out a complaint, which he filed in the local criminal court, charging Swartz with violation of New York's disorderly conduct statute.  Under New York law, such a complaint '[s]erves as a basis . . . for the commencement of a criminal action.' N.Y. Crim. Proc. Law § 100.10(1)."). *See also*, Tchatat v. City of N.Y., 2015 U.S. Dist. LEXIS 115093, at *18 (S.D.N.Y. Aug. 28, 2015):

> the Complaint sufficiently alleges that [Police Officer] O'Hara and [Police Officer] Arocho "initiated" Plaintiff's prosecution. "To initiate a prosecution, a defendant must do more than report the crime or give testimony." Manganiello, 612 F.3d at 163. "[A] defendant can [] be held liable for initiating a prosecution when that defendant fabricates evidence, and forwards that evidence to prosecutors." Lopez v. City of New York, No. 14 Civ. 3743, 105 F. Supp. 3d 242, 2015 U.S. Dist. LEXIS 56123, 2015 WL 1954470, at *6 (E.D.N.Y. Apr. 29, 2015) (citing Manganiello, 612 F.3d at 163).

As discussed, *supra*, Plaintiff was originally charged with Felony Criminal Mischief under NY Penal Law § 145.05.  This was based upon a Felony Criminal Court Complaint signed under penalty of perjury by Officer Allen.  Officer Allen has admitted that he had no reliable basis to conclude that the damage to the scooter was in an amount more than $250, as he swore to on that document, and no reliable evidence of that amount has been otherwise adduced by Defendants.  Officer Allen therefore perjured himself on the Felony Criminal Court Complaint, and fabricated evidence against Plaintiff with regard to the Felony Criminal Mischief charge.

*See*, Plaintiff's 56.1 Counterstatement at ¶¶ 33 and 62.  *See also*, Exhibit 13 to the 6/10/16 Further Rothman Decl.  Plaintiff also was maliciously charged for Resisting Arrest on that Felony Criminal Court Complaint.  Officer Allen was present, however, and observed Defendants DiFrancesca and Byrnes manhandle Plaintiff, and – considering the facts in the light most favorable to Plaintiff – he knew that Plaintiff had not resisted arrest.  *See*, Plaintiff's 5/13/16 56.1 Statement at ¶ 41.

Sergeant Byrnes is listed on the Felony Criminal Court Complaint as having informed Officer Allen as to the circumstances of Plaintiff's kicking over the scooter, and concerning Plaintiff's resisting arrest.  But, again – considering the facts in the light most favorable to Plaintiff – he would have known from witnessing the occurrence that Plaintiff kicked the scooter to get it off of him, and that he himself (along with Officer DiFrancesca) had brutally assaulted Plaintiff while arresting Plaintiff, and that Plaintiff had not resisted arrest.  On Plaintiff's facts, Sergeant Byrnes' lies[7] similarly render him liable to Plaintiff for malicious prosecution.

Officer DiFrancesca was also the deponent, under penalty of perjury, on a Misdemeanor Criminal Complaint that was lodged against Plaintiff, charging Plaintiff with Misdemeanor Criminal Mischief and Resisting Arrest.  *See*, Exhibit 8 to the 5/13/16  Rothman Declaration. The statements concerning the kicking of the scooter are here also attributed to Sergeant Byrnes as the informant.  As the Officer who assaulted Plaintiff with his scooter, and then left his scooter on top of Plaintiff and failed to assist Plaintiff, and then who manhandled Plaintiff and

---

[7] Sergeant Byrnes' testimony about his ostensible belief that Plaintiff was trying to kick him and other officers while Plaintiff was face down on the ground in police custody and being brutalized and handcuffed by Officer DiFrancesca and Sergeant Byrnes is also self-evidently ridiculous, and no reasonable juror could credit it.  *See*, Plaintiff's 56.1 Counterstatement at ¶ 80.

11

mashed his face into the street with a nightstick and falsely arrested him, Officer DiFrancesca also - on Plaintiff's facts - knew full well that Plaintiff kicked the scooter to get it off of him, and that Plaintiff had not resisted arrest. Officer DiFrancesca's perjury and fabrication of evidence on the Criminal Court Complaint also renders him liable to Plaintiff for malicious prosecution.

Defendants' argument that the chain of causation is broken because the District Attorney's Office chose to prosecute (and chose to lodge different charges than those suggested on the arrest report) is utterly meritless. It is the misrepresentation of <u>facts</u> to the D.A.'s Office that renders one liable for malicious prosecution, not whatever charge the D.A.'s Office lodges based upon those false facts. *See*, <u>Higazy v. Templeton</u>, 505 F.3d 161, 177 (2d Cir. 2007) ("While in <u>Townes [v. City of New York</u>, 176 F. 3d 138 (2d Cir. 1999)] we observed that a defendant cannot rely on the alleged existence of a superseding cause when that subsequent decision-maker has been deceived by the defendant's actions … in <u>Zahrey [v. Coffee</u>, 221 F.3d 342 (2d Cir. 2000)] we explained that '[e]ven if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.'" (internal citations omitted).

Probable cause for the prosecution also did not exist for the same reasons that probable cause for the arrest did not exist. On Plaintiff's facts there was plainly not probable cause to arrest, or to prosecute, Plaintiff. On Plaintiff's facts it was the Defendants who committed crimes upon Plaintiff.

Plaintiff has also plainly alleged a lack of probable cause, and malice for purposes of a malicious prosecution claim[8].  *See*, Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotations and citations omitted):

> Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.  In most cases, the lack of probable cause -- while not dispositive -- tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.

## IV.   CONCERNING THE PLAINTIFF'S CLAIMS FOR ABUSE OF PROCESS

With regard to his abuse of process claims, on Plaintiff's facts (Officer DiFrancesca assaulting a Legal Observer with a motor scooter, falsely arresting and beating him after he kicked the scooter to get it off of him, and then lodging false, cover charges against him in Criminal Court) a collateral objective can clearly be inferred.  *See*, Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) ("'collateral objective' includes retribution"); *see also*, Phelps v. City of New York, 2006 U.S. Dist. LEXIS 42926 at *16 (S.D.N.Y. 2006) (Cote, J.) ("Officers who promote or facilitate an arrest and prosecution may be liable for abuse of process…. Furthermore, the absence of probable cause is probative of the lack of justification for the officers' actions and the existence of a collateral objective.") (internal citation omitted).

---

[8] Plaintiff's "malicious prosecution" claim, which is only brought under § 1983 (Plaintiff in this action does not assert any claims under New York State law), is actually misnamed (it would be better called "unreasonable prosecution," or such).  Because the analysis under the Fourth Amendment is one based upon objective reasonableness, there ought not be any need to show subjective malice.  The Second Circuit has not yet so held, but other Circuits correctly have, and this Court should too.  *See*, e.g., Brooks v. City of Winston-Salem, 85 F.3d 178, 184 at n.5 (4th Cir. 1996); *see also*, Lambert v. Williams, 223 F.3d 257, 261-62 at n.2 (4th Cir. 2000); *see also*, Sykes v. Anderson, 625 F.3d 294, 309-10 (6th Cir. 2010).

**V.     CONCERNING THE PLAINTIFF'S CLAIMS FOR EXCESSIVE FORCE**

Plaintiff on May 13, 2016 moved for partial summary judgment on his claims for excessive force against Officer DiFrancesca for violently dragging Plaintiff and then mashing his face into the street with a nightstick, and his claims for failure to intervene to prevent same against Sergeant Byrnes and Officer Allen.  In conjunction with Plaintiff's 56.1 Counterstatement, Plaintiff respectfully also refers to those motion papers (5/13/16 Plaintiff's 56.1 Statement; 5/13/16 Rothman Decl., with Exhibits 1-8 thereto; and 5/13/16 Memorandum of Law in Support) with regard to his excessive force claims against Officer DiFrancesca.

Officer DiFrancesca also - on Plaintiff's facts - plainly employed excessive force upon Plaintiff with his motor scooter.  *See*, Plaintiff's 56.1 Counterstatement at ¶¶ 20-21, 24-31. Unlike the dragging and the nightstick face mashing (with regard to which Plaintiff should be awarded summary judgment based upon Officer DiFrancesca's admissions and the video evidence), Plaintiff's excessive force claims based upon his assault with the motor scooter are not, because of significant fact disputes, susceptible of summary judgment.

Concerning Plaintiff's excessive force claims against Sergeant Byrnes, he assisted Officer DiFrancesca in brutalizing Plaintiff and in falsely arresting Plaintiff, and there was no difficulty for these two powerful, beefy members of the NYPD to get Plaintiff's arms behind his back.  In addition to what is set forth in Plaintiff's 5/13/16 56.1 Statement at ¶¶ 32-43, either as Plaintiff was being handcuffed or after he had already been fully handcuffed behind his back Sergeant Byrnes also took his gloved hands and placed them on either side of Plaintiff's face, and smashed Plaintiff's face three times into the street.  Sergeant Byrnes was the only member of the NYPD who was physically engaging with Plaintiff who was wearing gloves at the location of

14

the incident, which is undisputed.  At 1:55 of Video file # 01807 Sergeant Byrnes can also be seen bending Plaintiff's right arm in a terribly unnatural and dangerous manner, that is plainly not designed to try to get his right arm to meet his left arm (which Officer DiFrancesca had already brought behind Plaintiff's back at that point) because it is jacked up and then violently bent down in front of DiFrancesca's right arm, which at that point was mashing Plaintiff's face into the street).  This wrenching of Plaintiff's right arm caused Plaintiff to experience agonizing pain.  Plaintiff described what Sergeant Byrnes did to his right arm as almost twisting it out of the socket, and Plaintiff was very worried about that when he was at Bellevue Hospital.  Plaintiff testified that his right shoulder joint hurt him for at least nine months after the incident, and he was concerned that it was a permanent injury and that he would never have full use of his shoulder again.  *See*, Plaintiff's 56.1 Counterstatement at ¶¶ 38, 40.

On the facts taken in the light most favorable to Plaintiff, Officer DiFrancesca and Officer Allen are also liable for failure to intervene to prevent Sergeant Byrnes' application of excessive force upon Plaintiff, for the reasons set forth in Plaintiff's 5/13/16 moving papers (in those papers as applied to Byrnes and Allen for failing to intervene to prevent DiFrancesca's application of excessive force upon Plaintiff).

Defendants' argument that the use of force was reasonable and *de minimis* is offensive. Plaintiff was brutalized, and he suffered serious injuries.  *See*, Plaintiff's 56.1 Counterstatement at ¶¶ 49-58.  Plaintiff was not remotely violent – on Plaintiff's facts he was entirely the victim of Defendants' shocking violence.

15

## VI.   CONCERNING THE PLAINTIFF'S CLAIMS FOR FIRST AMENDMENT RETALIATION

On Plaintiff's facts Officer DiFrancesca targeted Plaintiff for assault with his motor scooter because Plaintiff was wearing a neon green Legal Observer hat, and was in the process of trying to observe the arrest of another individual and get that person's pedigree information to give to the National Lawyer's Guild.  His neon green Legal Observer hat - intended in significant part to clearly identify Legal Observers at the scene of a demonstration to avoid problems with the police -unfortunately served as a bullseye for Officer DiFrancesca to aim his scooter at. Plaintiff has also provided (see 6/10/16 Further Rothman Decl. at ¶ 7) further video footage depicting other police violence - and particularly violence by NYPD scooter Officers - in lower Manhattan on the morning of Plaintiff's arrest.  The scooter officers, including Officer DiFrancesca, were on a violent rampage that morning against participants in the Occupy Wall Street movement demonstrations and those deemed to be associated with them, like Plaintiff.  On Plaintiff's facts Officer DiFrancesca targeted Plaintiff, knocked him down with his scooter, ran over his foot / leg, got off his scooter with the scooter's rear wheel trapping Plaintiff's right foot / leg area, and then, when Plaintiff kicked the scooter to free himself after his loud screams were ignored by the many members of the NYPD standing around and looking at him, Officer DiFrancesca proceeded to brutalize him.  A reasonable jury could infer from the circumstances that Officer DiFrancesca did these things to retaliate for Plaintiff's role as a Legal Observer , ensuring police accountability and protecting the rights of demonstrators at that morning's Occupy Wall Street events, where Officer DiFrancesca's scooter officer colleagues were engaging in acts of extreme aggression and violence. The rampant police violence and other violations of constitutional rights on the morning of October 14, 2011 toward the demonstrators and those deemed associated with them, and toward Plaintiff

16

specifically as a Legal Observer present to ensure that their First Amendment rights are respected, is

exceedingly dangerous to a healthy constitutional order.  Much more is expected, and required, of

professional law enforcement officers.  *See*, City of Houston v. Hill, 482 U.S. 451, 461-463

(1987):

> [T]he First Amendment protects a significant amount of verbal criticism and
> challenge directed at police officers....  [E]ven the 'fighting words' exception
> recognized in Chaplinsky v. New Hampshire ... might require a narrower
> application in cases involving words addressed to a police officer, because a
> properly trained police officer may reasonably be expected to exercise a higher
> degree of restraint than the average citizen, and thus be less likely to respond
> belligerently to 'fighting words'....
>
> The freedom of individuals verbally to oppose or challenge police action
> without thereby risking arrest is one of the principal characteristics by which we
> distinguish a free nation from a police state....
>
> Today's decision reflects the constitutional requirement that, in the face of
> verbal challenges to police action, officers and municipalities must respond with
> restraint....[T]he First Amendment recognizes, wisely we think, that a certain
> amount of expressive disorder not only is inevitable in a society committed to
> individual freedom, but must itself be protected if that freedom would survive.

(internal citations and quotations omitted).

## VII.   CONCERNING THE PLAINTIFF'S DUE PROCESS CLAIMS FOR
##         FABRICATION OF EVIDENCE

Concerning due process claims for fabrication of evidence (which are sometimes also

called denial of right to fair trial claims) by police officers, the Second Circuit held in Ricciuti v.

N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) as follows:

> No arrest, no matter how lawful or objectively reasonable, gives an arresting
> officer or his fellow officers license to deliberately manufacture false evidence
> against an arrestee. To hold that police officers, having lawfully arrested a
> suspect, are then free to fabricate false confessions at will, would make a mockery
> of the notion that Americans enjoy the protection of due process of the law and
> fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a

17

tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process.

When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

Ricciuti at 130. Internal citations and quotations omitted.

Judge Glasser from the Eastern District of New York just a month ago granted summary judgment to a civil rights plaintiff in circumstances similar to those at bar in this case. *See*, the May 5, 2016 Memorandum and Order in Juan Gomez v. City of New York, et al., 14 Civ. 2621 (ILG) (CLP) (E.D.N.Y.), annexed as Exhibit 15 to the Rothman Decl., which granted the plaintiff's motion for summary judgment in that action on his claim for denial of a fair trial / fabrication of evidence against one of the defendant officers, based upon admittedly false information sworn to by the officer in a criminal complaint.

As discussed, *supra*, in Section IV (concerning Plaintiff's malicious prosecution claims), on Plaintiff's facts all of Officer Allen, Officer DiFrancesca, and Sergeant Byrnes fabricated false evidence against Plaintiff in the two Criminal Court Complaints that were lodged against him.

## VIII.  CONCERNING THE PLAINTIFF'S FAILURE TO INTERVENE CLAIMS

Plaintiff's failure to intervene claims concerning the acts of excessive force committed upon him by Officer DiFrancesca and Sergeant Byrnes[9] are addressed *supra*, in Section VI

---

[9] Sergeant Byrnes, who was of a supervisory rank, is also liable under theories of supervisory liability. The Second Circuit has continued to use all of the categories of supervisory liability from Colon v. Coughlin following the Supreme Court's decision in Ashcroft v. Iqbal, and

(concerning Plaintiff's excessive force claims).  Additionally, and for the same reasons, Officer

Allen on Plaintiff's facts is liable for failing to intervene to prevent Plaintiff's false arrest by Officer

DiFrancesca and Sergeant Byrnes.  Officer Allen was present in the immediate vicinity and

observing as Officer DiFrancesca was mashing Plaintiff's face into the pavement with his

nightstick, and Officer  DiFrancesca and Sergeant Byrnes handcuffed Plaintiff in conjunction

therewith, and did nothing to prevent either the violence or the arrest.  *See*, Plaintiff's 5/13/16

56.1 Stat. at ¶ 41; *see also*, Plaintiff's 56.1 counterstatement at ¶ 90.

## IX.    DEFENDANTS ARE NOT ELIGIBLE FOR QUALIFIED IMMUNITY

The affirmative defense of qualified immunity protects police personnel and other

governmental officials and employees, under certain circumstances, from civil liability under 42

U.S.C. § 1983 for actions performed in the course of their duties.  If a defendant's conduct

---

opposing counsel's gloss on the state of the law in this regard is simply incorrect.  *See*, Tchatat v.
City of N.Y., 2015 U.S. Dist. LEXIS 115093, at *20-21 (S.D.N.Y. Aug. 28, 2015):

> To state a claim for supervisory liability under § 1983, a plaintiff must plead "individual,
> personalized liability on the part of each [] defendant."  Raspardo v. Carlone, 770 F.3d
> 97, 116 (2d Cir. 2014); accord Iqbal, 556 U.S. at 676 ("Because vicarious liability is
> inapplicable to . . . § 1983 suits, a plaintiff must plead that each [] defendant, through the
> official's own individual actions, has violated the Constitution.").  A plaintiff may
> demonstrate that a supervisory defendant was personally involved in the alleged
> constitutional violation through evidence that:
>
> > (1) the defendant participated directly in the alleged constitutional violation, (2)
> > the defendant, after being informed of the violation through a report or appeal,
> > failed to remedy the wrong, (3) the defendant created a policy or custom under
> > which unconstitutional practices occurred, or allowed the continuance of such a
> > policy or custom, (4) the defendant was grossly negligent in supervising
> > subordinates who committed the wrongful acts, or (5) the defendant exhibited
> > deliberate indifference to the rights of [plaintiffs] by failing to act on information
> > indicating that unconstitutional acts were occurring.
>
> Raspardo, 770 F.3d at 116 (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

violated "clearly established statutory or constitutional rights of which a reasonable person would have known," however, the Court must deny the defendant the protection afforded by qualified immunity. Wilson v. Layne, 526 U.S. 603, 614 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)). It is Defendants' burden to show that they were not reasonably on notice of the unconstitutionality of their conduct. "Because qualified immunity is an affirmative defense ... the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." Tellier v. Fields, 280 F.3d 69, 84 (2d Cir.2000)(internal citation and quotation omitted).

Qualified immunity must be denied in this case because on the Plaintiff's facts the individual Defendants in fact knew that there was no probable cause to arrest Plaintiff, and violated clearly established law in brutalizing him and prosecuting him based upon lies. In a case involving brutality and dishonesty such as this one, qualified immunity falls by the wayside. On the Plaintiff's facts Defendants plainly violated clearly established law, and did so knowingly, and are thus ineligible to invoke the doctrine of qualified immunity. If at trial the Defendants' facts are believed in predominant part by a jury then there may be probable cause. But there cannot be qualified immunity here, where the facts of what led up to the arrest are so much in dispute, and there is a question of fact as to whether the Defendant members of the NYPD lied and fabricated evidence against Plaintiff. See, Davis v. City of New York, 373 F.Supp.2d 322, 338 (S.D.N.Y. 2005)("where, as here, there is a question of fact as to whether defendants acted with malice in initiating a prosecution against plaintiffs, summary judgment on qualified immunity is inappropriate."). At a minimum, it displays plain incompetence and

indifference to the Plaintiffs' rights for police officers to so blithely swear to facts as true that they either knew, or should have known, were not true.

As the Supreme Court explained in Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982), "we have held that qualified immunity would be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]," (emphasis in original)(internal quotation and citation omitted). Harlow further held that:

> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct…. By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

Harlow at 818-19.   Given both the objective unreasonableness of Defendants' actions in assaulting him with a motor scooter, failing to assist him when it was brought to rest on top of him and trapping him underneath, and then brutalizing him, arresting him, and lodging false criminal charges against him using fabricated evidence, and the evidence that Defendants in fact knew that Plaintiff had not violated any law, Defendants are not eligible for qualifiedly immunity from liability on Plaintiff's claims in this case[10].

---

[10] Defendants' argument on page 18 of their brief that "there is no clearly established right to photograph and publicly record the police or act as an observer" is 180 degrees incorrect.  The public street where Plaintiff was engaging in his Legal Observer duties, and facilitating the lawful First Amendment expression of the Occupy Wall Street demonstrators, is, of course a place where the rights to free expression and association are at their apogee:

> Wherever the title of streets and parks may rest, they have immemorially been

## X.      CONCERNING MUNICIPAL LIABILITY

The police behaved exceedingly aggressively toward the Occupy Wall Street demonstrators on October 14, 2011.  *See*, Plaintiff's 56.1 Counterstatement at ¶ 87, which cites to deposition testimony of two non-party witnesses in that regard, as well as two videos which show other police violence - and particularly violence by NYPD scooter Officers – against OWS demonstrators and those deemed to be associated with them in lower Manhattan on the morning of Plaintiff's arrest.

Plaintiff has also testified that while he was waiting for an ambulance in police custody outside of the NYPD 7th Precinct, 3 or 4 John Does NYPD Police Officers came over to him. Looking at Plaintiff's bloodied head and face, one of the John Does Police Officers commented that if it was up to him he and his colleagues in the NYPD would go down to Zuccotti Park with bats and clear out all the Occupy Wall Street demonstrators.  *See*, Plaintiff's 56.1 Counterstatement at ¶88.

Plaintiff in his Complaint has also listed a wealth of information concerning a large number of other civil rights lawsuits[11] against the City of New York and members of the NYPD

---

held in trust for the use of the public and, time out of mind, have been used for
purposes of assembly, communicating thoughts between citizens, and discussing
public questions.  Such use of the streets and public places has, from ancient
times, been a part of the privileges, immunities, rights, and liberties of citizens.

Hague v. CIO, 307 U.S. 496, 516 (1939).  Plaintiff's actions to facilitate the First Amendment expression of the OWS demonstrators on this public street is plainly itself also entitled to First Amendment protection.

[11] Defendants are incorrect on page 23 of their brief when they state that a clause in a settlement agreement, in another litigant's case, that the agreement is not admissible in other litigation, is binding on the Plaintiff in this case.  Plaintiff is only bound by agreements that he himself enters into.  Greenfield v. City of N.Y., 99 Civ. 2330 (AJP), 2000 U.S. Dist. LEXIS 1164, at *43

concerning the NYPD's policing of the Occupy Wall Street protests[12] (and concerning the
NYPD's history related to the "blue wall of silence" and cover-up of the misconduct of fellow
officers), and cited to a scholarly human rights report[13] issued concerning the NYPD's myriad
and brutal civil rights violations in the context of its policing of the OWS protests, in support of
his Monell claims, and Plaintiff respectfully requests that the Court take judicial notice of these
materials and information. *See*, Complaint, annexed as Exhibit A to the 5/13/16 Lucas Decl. at
¶¶ 52-60.

Plaintiff has therefore sufficiently established the merits of his claims for municipal
liability.

---

(S.D.N.Y. Feb. 3, 2000), cited by Defendants at page 23 of their brief, bound the City of New
York because the City was a party to those agreements.

[12] Concerning Plaintiff's Monell claim for the illegal search of his electronic equipment, there is
reason to believe that John Does members of the NYPD - pursuant to unconstitutional policies
and practices - searched or tampered with Plaintiff's electronic equipment which was seized
from him during his arrest, since it was returned to him shrink-wrapped, which is highly unusual
(it does not occur with other arrestees' electronic equipment) and which has never been
explained by Defendants.  Plaintiff's 56.1 Counterstatement at ¶ 89.  *See also*, Complaint
(annexed as Exhibit A to the 5/13/16 Lucas Decl.) at ¶¶ 43 and 59.

[13] The report - overwhelmingly concerning, and documenting, hundreds of instances of abuse by
the NYPD in relation to policing the OWS movement - was compiled by The Global Justice
Clinic at the New York University School of Law and the Walter Leitner International Human
Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School,
and is entitled "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy
Wall Street," published July 25, 2012.  Judge Swain has cited to the existence of a government
report ("extensive portions of a letter issued by the Department of Justice … describing the
findings of an investigation of the Westchester County Jail …") in denying a motion for
summary judgment on a Monell claim in Shepherd v. Powers, 55 F.Supp.3d 508, 516 (S.D.N.Y.
2014).

**CONCLUSION**

For all the reasons set forth above and in Plaintiff's 56.1 counterstatement submitted on this date, and all the reasons set forth in Plaintiff's motion papers of May 13, 2016, Plaintiff respectfully requests that this Honorable Court deny the Defendants' motion for summary judgment, and grant his motion for partial summary judgment.


Dated:      New York, New York
            June 10, 2016


                              Respectfully submitted,

                              _____/S/_____
                              JEFFREY A. ROTHMAN
                              315 Broadway, Suite 200
                              New York, New York 10007
                              (212) 227-2980

                              *Attorney for the Plaintiff*

24