UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ARIEL DOUGLAS,                                      )
                                                    )
                          Plaintiff,                )
                                                    )
          -against-                                 )
                                                    )
THE CITY OF NEW YORK; POLICE OFFICER                )          **14 Civ. 8124 (ALC)**
ANTHONY DIFRANCESCA, Shield No. 04200;              )
POLICE OFFICER JEROME ALLEN, Shield No.             )
27302; POLICE SERGEANT BRIAN BYRNES,                )
Shield No. 969; JOHN DOES; and RICHARD              )
ROES,                                               )
                                                    )
                          Defendants.               )
--------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT, AND IN FURTHER OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

INTRODUCTION …. ........................................................................................................1

ISSUES CONCERNING DEFENDANTS' JUNE 10, 2016 RESPONSE AND
COUNTER-STATEMENT TO PLAINTIFF'S LOCAL CIVIL RULE 56.1
STATEMENT ………………………………………………………………………….1

ARGUMENT IN REPLY CONCERNING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ......................................................................4

CONCLUSION …..........................................................................................................  9

## INTRODUCTION

Plaintiff respectfully submits this Memorandum of Law in Reply, in further support of Plaintiff's Motion for Partial Summary Judgment, and in further opposition to Defendants' cross-motion for summary judgment.

## ISSUES CONCERNING DEFENDANTS' JUNE 10, 2016 RESPONSE AND COUNTER-STATEMENT TO PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT

As an initial matter, Defendants' June 10, 2016 Response and Counter-Statement to Plaintiff's Local Civil Rule 56.1 Statement contains, starting at page 17, ¶¶ 51-81 that are referred to as "Counter 56.1 Statement," but which simply repeat - almost entirely verbatim but with different paragraph numbering - statements that were already asserted in their original May 13, 2016 Local Rule 56.1 Statement, and which Plaintiff has already responded to in his June 10, 2016 56.1 Response.  This is both unnecessary and confusing.  Plaintiff respectfully refers the Court to Plaintiff's prior responses to these same statements as follows:

| Defendants' 6/10/16 "Counter 56.1 Statement" paragraphs: | Responded to by the following paragraphs in Plaintiff's 6/10/16 Local Rule 56.1 Response: |
|---|---|
| ¶¶ 51-57 (previously ¶¶ 21-27 in Defendants' 5/13/16 56.1 Statement) | ¶¶ 21-27, respectively |
| ¶ 58 appears to be a new statement, that does not appear in Defendants' 5/13/16 56.1 Statement.  It is objected to, however, as Plaintiff denies putting his foot in front of Officer DiFrancesca's scooter in order to cause an impact. Plaintiff and non-party witnesses have testified that Officer DiFrancesca drove | ¶¶ 20, 24, 26-28, respectively |

1

| | |
|---|---|
| his scooter aggressively into the crowd and struck Plaintiff with the scooter.  *See*, ¶¶ 20, 24, 26-28 of Plaintiff's 6/10/16 Local Rule 56.1 Response. | |
| ¶¶ 59-63 (previously ¶¶ 28-32 in Defendants' 5/13/16 56.1 Statement) | ¶¶ 28-32, respectively |
| ¶ 64 (previously ¶ 35 in Defendants' 5/13/16 56.1 Statement) | ¶ 35 |
| ¶ 65 appears to be a new statement, that does not appear in Defendants' 5/13/16 56.1 Statement.  It is objected to, however, as Plaintiff denies resisting arrest at any point.  Plaintiff in fact has testified that he did not lock his hands together, or otherwise attempt to resist arrest, and that he tried as much as possible to comply with the two beefy members of the NYPD (Defendants DiFrancesca and Byrnes) who were brutalizing him and - in full and complete control of him and the movement of his arms - placing him under arrest.  *See*, ¶¶ 34-40 of Plaintiff's 6/10/16 Local Rule 56.1 Response. | ¶¶ 34-40 |
| ¶¶ 66-73 (previously ¶¶ 36-43 in Defendants' 5/13/16 56.1 Statement) | ¶¶ 36-43, respectively |
| ¶¶ 74-79 (previously ¶¶ 49-54 in Defendants' 5/13/16 56.1 Statement) | ¶¶ 49-54, respectively |
| ¶¶ 80-81 (previously ¶¶ 57-58 in Defendants' 5/13/16 56.1 Statement) | ¶¶ 57-58, respectively |

Plaintiff also wishes to correct Defendants' tendentious and distorted rendering of the testimony of non-party witness Joseph Marino in ¶¶ 17-19 of their June 10, 2016 Response and Counter-Statement to Plaintiff's Local Civil Rule 56.1 Statement.  Mr. Marino - a freelance press photographer - had a quote that was attributed to him in a Oct 14, 2011 article in the Gothamist

newspaper (which had been taken from a New York Daily News article) that read in the article as follows:

> A photographer for the Daily News who witnessed the confrontation, Joe Marino, says, 'the bike [Officer DiFrancesca's motor scooter] definitely hit him,' but the officer didn't run him over. 'I saw him sticking his legs under the bike to make it appear he was run over,' Marino claims.

*See*, Gothamist article, annexed as Exhibit 16 to 2nd Further Rothman Decl.; *See also*, New York Daily News article, annexed as Exhibit 17 to 2nd Further Rothman Decl.; *See also*, testimony of Joseph Marino, annexed as Exhibit 18 to 2nd Further Rothman Decl., at pages 7-11.

Mr. Marino made very clear, however, that he had only been speaking to the Daily News reporter colleague to colleague on background, and that he had not said the words he was quoted as having said. *See*, Marino dep, 8:3, 11:8-20. He explained that what he had observed was Plaintiff on the ground, with one of his feet under the first wheel of the scooter, a lot of yelling and screaming, and then seeing Plaintiff lying on his side, putting his legs under the scooter. Mr. Marino was clear that he did not know what Plaintiff's intention was, "so what his motivation was, was speculative on my part." *See*, Marino dep, 11:21-12:18.

Mr. Marino also testified that he had made an audio statement to the NYPD's Internal Affairs Bureau ("IAB"), that he listened to with counsel for both sides before giving his testimony. *See*, Marino dep, 12:19-13:7, 18:12-19:5. On the audio recording (which indicates that it was given on the same day as the Oct 14, 2011 Daily News article) Mr. Marino states that he did not see the moment of impact with the police scooter, and could not say whether or not the scooter hit Plaintiff. He also said that he did not see whether the scooter had run over Plaintiff's ankle, and that maybe it did. *See*, Marino audio interview with NYPD Internal Affairs Bureau, annexed as Exhibit 19 to 2nd Further Rothman Decl. At his deposition he further stated that he

3

saw what he described as Plaintiff putting his legs under the scooter, but that he did not know

what Plaintiff's motivation or intention was, did not know whether Plaintiff was thrashing his

legs because he was experiencing pain and / or fear, and did not know whether or not Plaintiff's

screams were genuine or feigned.  *See*, Marino dep 14:5-15:17.

    Further - concerning Plaintiff's <u>Monell</u> claims - Mr. Marino further explained to the IAB

interviewer that on the date of the incident he also was hit by an NYPD scooter, that everyone

who was present made contact with an NYPD scooter, and that he saw the police use scooters

(which he also refers to as "mopeds") with force to move people on more than one occasion that

day.  *See*, Marino audio interview with NYPD Internal Affairs Bureau at 9:23-10:55.


## ARGUMENT IN REPLY CONCERNING
## <u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

    Defendants apparently have misunderstood Plaintiff's arguments made in support of his

motion for partial summary judgment.  Plaintiff's argument is that if all the facts are taken in the

light most favorable to Defendants, and the jury should at trial credit Defendants' version of

events in  full - that Plaintiff stuck his leg out to make the scooter hit him, that Plaintiff purposely

fell to the ground, that Plaintiff pretended the scooter had run over his foot / leg, that Plaintiff's

screams were feigned, that Plaintiff pretended that the scooter had come to rest trapping his foot /

leg under it, that Plaintiff had kicked the scooter in order to cause it damage and not to try to get

it off of him, that Plaintiff had resisted arrest, and that Plaintiff after his arrest had, rear-cuffed,

thrown himself into Chief of Patrol James Hall out of nastiness in order to smear the Chief's nice

white shirt with the blood from his face - that the Court should still grant Plaintiff's motion for

partial summary judgment as to his claims for excessive force against Defendant Police Officer

Anthony DiFrancesca, and as to his claims for failure to intervene against Defendant Police

Sergeant Brian Byrnes and Defendant Police Officer Jerome Allen, because the violence meted

out upon him by Officer DiFrancesca was objectively excessive as a matter of law.  The Court

can and should so hold relying solely on the video evidence proffered, in conjunction with

Officer DiFrancesca's admissions and the other documents and information annexed to the May

13, 2016 Rothman Declaration[1].

    Plaintiff has submitted the litany of unreasonable assumptions[2] made by Officer

DiFrancesca in this quick period of time (all of which were informed by his assumption that

Plaintiff - who he knew nothing about whatsoever - was part of what he took to be a common

---

[1] Plaintiff also incorporates by reference herein his submissions made in his June 10, 2016 filings in opposition to Defendants' motion for summary judgment, and in further support of Plaintiff's motion for partial summary judgment.

[2] Defendants argue that when Plaintiff in his Local Rule 56.1 statement of undisputed facts sets forth Officer DiFrancesca's testimony as to his assumptions - and clearly and explicitly for that purpose alone, and specifically denying the substantive truthfulness and accuracy of those assumptions - Plaintiff therefore adopted the substantive truthfulness and accuracy of that which he specifically denied.  This is nonsensical.  In any event, Plaintiff's June 10, 2016 Local 56.1 Counterstatement and the materials referenced therein and provided therewith as part of the June 10, 2016 Further Rothman Declaration provide the evidentiary material supporting Plaintiff's and non-party witnesses' narratives, which contradict the substance of Officer DiFrancesca's unreasonable assumptions.  The point of submitting Officer DiFrancesca's set of unreasonable assumptions was to show the Court how they evince - individually, and certainly collectively - the irrational and unhinged mind possessed by this police officer who exercises tremendous power over those whom he polices.  Unfortunately for Plaintiff, on October 14, 2011 that power, *inter alia*, grabbed him, dragged him, got on top of him, and violently mashed his face into the pavement with his nightstick, using both the force of his powerful arms and the force of gravity to push his approximately 220 pounds down on the back of Plaintiff's neck with this hard object.  Officer DiFrancesca's large size, significant strength, and combat training (through both his long career in the NYPD and in the Marine Corps) also illustrate the manifest unreasonableness of the extreme force used upon Plaintiff in this case.  Because it is so clear that the force used upon Plaintiff was excessive, Defendants' argument for qualified immunity also does not avail them. *See also*, pages 19-21 to Plaintiff's June 10, 2016 Memorandum of Law (concerning qualified immunity).

anti-police press narrative[3]) because they provide context and inform what transpired, and

because the Court may find them to be material. Plaintiff's motion for partial summary

judgment does not rest upon Officer DiFrancesca's unreasonable assumptions, however. It rests

upon his brutal actions, which are captured on videotape, in violently dragging Plaintiff in the

street, and then wantonly mashing his face into the pavement with his nightstick (in the

immediate presence of, and witnessed by, Sergeant Byrnes and Officer Allen, neither of whom

attempted to intervene to prevent it from occurring[4], despite their proximity and ability to do so).

    It also cannot be disputed, because it is similarly captured on videotape, that there was no

"frenzy" or "surging" by the crowd[5] - as Officer DiFrancesca falsely testified - when he grabbed

---

[3] Defendants' Footnote 1 on page 4 of their opposition brief is truly bizarre. Plaintiff has never claimed that his status as a Legal Observer "predisposes him to a pro-police bias," or anything like that. Plaintiff was just there doing his job as a Legal Observer. It was Officer DiFrancesca who assumed - without any basis whatsoever - that Plaintiff had an anti-police bias and was part of what he imagined was a common press narrative that was trying to make the police look bad.

[4] Sergeant Byrnes, in fact, assisted Officer DiFrancesca in handcuffing Plaintiff. The brutality which he meted out upon Plaintiff is discussed in Plaintiff's June 10, 2016 motion papers. Defendants are completely confused when they state on page 7 of their opposition brief that Plaintiff "now claims that he does not assert an excessive force claim against Sgt. Brian Byrnes …." Plaintiff indeed does assert an excessive force claim against Sergeant Byrnes, but he is not moving for summary judgment against him on that claim. Officer Allen did not lay hands upon Plaintiff, but he did fail to intervene to prevent both Officer DiFrancesca's and Sergeant Byrnes' excessive use of force upon him. Plaintiff only moves for summary judgment against Officer Allen concerning his failure to intervene to prevent Office DiFrancesca's violence, however.

[5] Defendants' reference to "two members of the crowd [who] were subsequently arrested for interfering with the police, including throwing liquid and trash at them" should be ignored by the Court, as no evidence concerning that has been submitted by Defendants. Further, whatever may have occurred subsequent to Plaintiff's arrest is not relevant to what Defendants' actions and omissions at the time they arrested and brutalized him. Certainly what the Defendants did to Plaintiff indeed did shock and upset the onlookers present very much – if there were any reactions from any members of the crowd thereafter it may well have been in response to the brutality they had just witnessed by the police.

Plaintiff and dragged him away to brutalize him. The video evidence makes clear that all of the physical aggression at the scene at the time of Plaintiff's arrest was coming from Officer DiFrancesca and his colleagues in the NYPD.

Defendants' arguments that Plaintiff's kicking of a motor scooter that was on top of him (whether or not his foot / leg was trapped, as to which there is an issue of fact[6]) evinced violence are not sound. Officer DiFrancesca testified that he got off of his scooter - with Plaintiff underneath it - and did not give any thought at all to potentially trying to assist Plaintiff, and did not give any thought at all to the possibility that Plaintiff might have been in need of assistance when he was underneath the scooter. Officer DiFrancesca's lies - demonstrated as such by the video evidence - that, after Plaintiff kicked the scooter while he was underneath it, he claims to have seen Plaintiff with Plaintiff's foot still up in the air, poised to strike a helmeted member of the NYPD, also provides valuable context to the instant application. That simply did not happen[7]. Plaintiff is seen clearly on the video footage, after kicking the scooter to get it off of

---

[6] Defendants have not, and cannot, put forth any evidence that Plaintiff's foot / leg was not trapped by the scooter's rear tire. All they can argue is that they assume it was not trapped because they concluded subjectively that Plaintiff purposely put his legs there. Officer DiFrancesca (and the other Defendants and members of the NYPD in the immediate area) never took even a moment to check if Plaintiff was OK, however, or to see if he was trapped or otherwise in need of assistance as he screamed loudly while under the scooter. The video evidence shows that Officer DiFrancesca got off his scooter, completely ignored Plaintiff (who was underneath it), and aggressively went to move back the onlookers, only returning to Plaintiff to brutalize him after Plaintiff kicked the scooter to get it off of him. Defendants similarly cannot put forth any evidence, other than their subjective assumptions and conclusions, that Plaintiff did not kick the scooter to get it off of him.

[7] The video evidence also entirely belies Defendants' argument on page 5 of their opposition brief that Plaintiff, after kicking the scooter, "then kept kicking his legs." No reasonable juror could review the video evidence and conclude that Plaintiff was trying in any way to kick at anyone. It is also noteworthy that - despite Defendants' arguments that Plaintiff's conduct was dangerous and violent - none of the charges on his arrest report have anything to do with assault,

him, scooching his body backwards and away from the scooter, at which point he is immediately picked up and violently dragged by Officer DiFrancesca and his colleagues to the location where DiFrancesca proceeds to violently mash his face into the pavement with his nightstick. Defendants' further argument that the violence meted out upon Plaintiff was justified because he was trying to escape by scooching backwards is also unavailing.  There were numerous members of the NYPD all around Plaintiff, and Plaintiff never even got up off of the ground.  Officer DiFrancesca grabbed Plaintiff immediately after he kicked the scooter and scooched backward. Even if a reasonable jury could potentially conclude - which it could not - that Plaintiff had been trying to escape, that also would not render appropriate the extreme force used upon him.

Similarly, assuming *arguendo* for purposes of this motion that Plaintiff was flailing or stiffening his arms, or clasping his hands, or otherwise resisting arrest after having been dragged by Officer DiFrancesca and deposited on his stomach, that likewise could not justify Officer DiFrancesca's mashing of his face into the pavement with his nightstick.  With all of the other members of the NYPD who were immediately around him, this Court must hold that it was objectively excessive for Officer DiFrancesca to mash Plaintiff's face into the pavement with his nightstick.  Any flailing or stiffening of arms, or clasping of hands, that Defendants allege Plaintiff engaged in could easily have been overcome by Officer DiFrancesca and his colleagues without resorting to this degree of violence to Plaintiff's neck, head, and face.  Plaintiff in significant respect is very lucky indeed that he emerged from this experience with the only injuries to this sensitive part of his body being a laceration requiring stitches to close.  He could

_____

attempted assault, or any other crime of violence.  *See*, NYPD Arrest Report, annexed as Exhibit G to the May 13, 2016 Lucas Declaration.

easily have sustained life-changing and permanent injuries, and possibly died from this intense

force used upon his neck, head and face.  The Court cannot countenance the use of such force in

the circumstances at bar, where Plaintiff - being arrested (assuming *arguendo* the arrest was

proper for purposes of Plaintiff's motion) for the alleged commission of a crime that was not

severe - was in the complete physical control of Officer DiFrancesca and Sergeant Byrnes, and

their numerous colleagues in the NYPD (including Officer Allen) who were all around them in

the immediate vicinity.

## CONCLUSION

For all the reasons set forth above, and in Plaintiffs' May 13, 2016 and June 10,

2016 submissions, Plaintiff respectfully requests that this Honorable Court grant his

motion for partial summary judgment, and deny the Defendants' motion for summary

judgment in its entirety.


Dated:          New York, New York
                June 24, 2016


                              Respectfully submitted,

                              _____/S/_____
                              JEFFREY A. ROTHMAN
                              315 Broadway, Suite 200
                              New York, New York 10007
                              (212) 227-2980

                              *Attorney for the Plaintiff*

9